C. Lynn NUNLEY et al., Appellants,

v.

The STATE BOARD OF INSURANCE, Appellee.

No. 5047.

Court of Civil Appeals of Texas, Eastland.

June 2, 1977.

Rehearing Denied June 23, 1977.

· Elgin E. Conner, Jr., Barnett, Collier & Conner, Lubbock, for appellants.

Patrick P. Rogers, Asst. Atty. Gen., Austin, John C. Phillips, Jr., Asst. Gen. Counsel, San Antonio, amicus curiae, for appellee.

RALEIGH BROWN, Justice.

This is a declaratory judgment action in which C. Lynn Nunley, Rodney J. Hadfield, Frank E. Frey and Associates, Dennis S. Eubanks, and National Committee for Truth in Life Insurance and Financial Planning, Inc. seek under the provisions of Article 21.21, § 13(e) and (f) of the Insurance Code to have declared null and void Regulation No. 27700, as amended (Regulation in Respect of Replacement of Life Insurance) issued by The State Board of Insurance. Trial without a jury resulted in a judgment upholding the regulation. Plaintiffs appeal. We affirm.

The thrust of the appeal is a constitutional challenge to the regulation. Appellants argue (1) the regulation unreasonably and unnecessarily restricts and deprives individual members of the insurance buying public of their freedom and right to contract in violation of Article I, Sections 3, 16 and 19 of the Texas Constitution and Amendment 14 of the United States Constitution; (2) it unreasonably restricts and deprives individual members of the insurance buying public of their freedom and right to privacy and

nondisclosure of confidential information in violation of Article I, Sections 3, 8, 9, 16, 17 and 19 of the Texas Constitution and Amendments 1, 4, 5, 9 and 14 to U. S. Constitution; (3) the regulation violates the equal protection clauses of Article I, Sections 3, 17, 19 and 26 of the Texas Constitution and Amendment 14 of U. S. Constitution; (4) it violates the due process clause of Article I, Section 19 of the Texas Constitution and Amendment 14 of U. S. Constitution; and (5) the regulation is unconstitutional and invalid because of its vague penal provisions and indefinite standards.

Regulation No. 27700 recites that the purpose is:

"(1) To implement the insurance laws of the State of Texas by regulating the act and practices of insurers and agents with respect to replacing life insurance.

(2) To protect the interest of the life insurance public by establishing 'minimum standards' of conduct to be observed in the replacement or proposed replacement of life insurance policies; by making available full and clear information on which an applicant for life insurance can make a decision in his own best interest; by reducing the opportunity for misrepresentation and incomplete comparison in a replacement situation; and by precluding unfair methods of competition and unfair practices."

Witness Rosson testified as to the need for the regulation as follows:

"Q Do you have personal knowledge of the reason why there was a move for regulation on replacement of insurance policies?

A Well, of course, the reason for it: Basically, the NAIC regulation and all of them was to give the insurance-buying public as full a disclosure as would be possible in the field of replacement of insurance. That was the purpose of it.

Q So, if I interpret your answer correct, there was concern within the insurance industry of a problem?

A Yes, sir, there was.

Q Could you explain on that problem, what the problem was?

A The problem was that there apparently were replacements and the thinking in the industry and the National Association of Insurance Commissioners is that—was that the party replacing insurance should be given as much information as possible to enable him to make a rational decision. That was the rationale behind it.

Q And was there some problems with, say, unscrupulous insurance agents going out and making some misrepresentations, which caused this concern in the insurance industry?

MR. CONNER: Your Honor, I would have to have a definition on that question of what Counsel means by unscrupulous. That could mean anything.

THE COURT: I assume he means complaints.

Is that what you mean?

MR. ROGERS: Yes, sir.

THE COURT: You understand it, don't you, Mr. Rosson?

A There were complaints, yes, sir.

Q Is there a term in the legal business and in the insurance business that would describe these misrepresentations?

A I would say that the common term for it would be twisting.

Q Could you define that term for me?

A I think twisting would be any misrepresentation in the sale of insurance, whether it was an affirmative misrepresentation or an omission of a material fact.

Q Twisting is illegal, is that right?

A It is in any state that I know anything about, yes, sir.

Q But replacement of insurance policies is legal?

A Oh, yes. The regulation does not prevent replacement.

Q Would it be fair to say it is kind of a preventive medicine to prevent the practice of 'twisting'?

A I would say that the replacement regulation is meant to regulate replace-

ment and one of the facets of it would be that if properly enforced that it would surface misrepresentations in the replacement of life insurance, yes, sir.

Q And in your experience as an attorney and as counsel for an insurance company, does the regulation on its face serve a useful purpose to the consumer?

A Yes, sir, I think it does.

Q Could you explain that purpose?

A Well, I think the purpose is that the effect is that it gives the consumer the buyer has much information or more information than he would receive if the regulation were not in effect. Its purpose is disclosure of pertinent facts."

■ Appellants' challenge of the regulation is resolved by the principles stated in *Texas State Board of Barber Examiners v. Beaumont Barber College, Inc.,* 454 S.W.2d 729 (Tex.1970):

". . . The burden is upon one who attacks a law for unconstitutionality. *Texas National Guard Armory Board v. McCraw,* 132 Tex. 613, 126 S.W.2d 627 (1939). It was there said, and repeated in *Smith v. Davis,* 426 S.W.2d 827 (Tex.Sup. 1968) that 'There is a strong presumption that a Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds.' It is not the function of the courts to judge the wisdom of a legislative enactment. *State v. Spartan's Industries, Inc.,* 447 S.W.2d 407 (Tex.Sup. 1969). The necessity or reasonableness of particular regulations imposed under the police power is a matter addressed to the legislative department whose determination in the exercise of a sound discretion is conclusive upon the courts. Legislative enactments will not be held unconstitutional and invalid unless it is absolutely necessary to so hold. *Smith v. Patterson,* 111 Tex. 535, 242 S.W. 749 (1922); see also *State v. Brownson,* 94 Tex. 436, 61 S.W. 114 (1901) and *Lytle v. Halff,* 75 Tex. 128, 12 S.W. 610 (1889)."

The court in *Jefco, Inc. v. Lewis,* 520 S.W.2d 915 (Tex.Civ.App.—Austin 1975, writ ref. n. r. e.) said:

". . . As the police power rests in the State, the legislature, by proper grant, may delegate that power to administrative agencies.

The wisdom of the exercise of the police power is largely for legislative rather than judicial determination. Courts are reluctant to disturb an exercise of the police power, and will not unless it appears that the regulation was unnecessary and unreasonable. If a difference of opinion may exist as to the necessity and reasonableness of the regulation, the courts will not invalidate the regulation . . . ."

See also *City of Coleman v. Rhone,* 222 S.W.2d 646 (Tex.Civ.App.—Eastland 1949, writ ref'd).

■ The regulation neither unreasonably nor unnecessarily restricts and deprives insurance purchasers of their freedom and right to contract nor restricts and deprives them of their right to privacy and nondisclosure.

The express purpose of the regulation is to protect a prospective purchaser of life insurance by providing him with certain disclosures to assist him in determining whether he should or should not replace his existing insurance policy or policies. The regulation requires of insurance agents the following:

"*Section 5.* DUTIES OF AGENT.

Each life insurance agent shall: (1) obtain with or as a part of each application for life insurance a statement signed by the applicant as to whether such insurance will replace existing life insurance. (2) submit to the insurer in connection with each application for life insurance a statement as to whether, to the best of knowledge, replacement is involved in the transaction."

Sections 6 and 7 of the regulation specify the duties of an agent licensed to sell life

insurance and securities and the duties of insurers.[1]

Appellants agree that in order to give proper professional insurance advice, it would be necessary for an agent to inquire as to a prospective purchaser's financial background, present insurance program and future needs, thereby necessitating a full disclosure of a purchaser's financial situation. The regulation, however, applies only to the replacement of insurance and not to the purchase of new insurance which does not replace existing insurance. The record supports the fact there is a public danger in the replacement of insurance and there is a compelling 'state interest in protecting the rights of the public from unscrupulous "twisting."

The court in *Daniel v. Tyrrell & Garth Inv. Co.,* 127 Tex. 213, 93 S.W.2d 372 (1936) said:

"The business of insurance generally is now recognized to be one affected by public interest. 14 R.C.L. p. 857, and authorities there cited."

The issue then is whether an individual's right should yield to overriding public interest and be regulated under the police power of the state. The court in *Palmer v. Unauthorized Practice Committee of State Bar of Texas,* 438 S.W.2d 374 (Tex.Civ.App.— Houston (14th Dist.) 1969, no writ) considering such an issue said:

"Constitutional rights of speech, publication and obligation of contract are not absolute, and in a given case where the public interest is involved, courts are entitled to strike a balance between fundamental constitutional freedoms and the state's interest in the welfare of its citi-

1. "Section 6. DUTY OF AGENT LICENSED FOR SALE OF BOTH LIFE INSURANCE AND SECURITIES.

An agent licensed for the sale of both life insurance and securities, who proposes to sell mutual funds or other securities to a policyholder under circumstances which will result in any replacement of such policyholder's existing life insurance, as defined in Section 3 of this Regulation, shall complete a written statement, signed by both the agent and the policyholder, the original of which shall be left with the policyholder and a copy of which shall be forwarded to the insurer which issued the contract proposed to be replaced at least ten days prior to the completion of the proposed replacement. Such statement shall set forth:

(1) As to the existing life insurance, the information provided for in Exhibit A of this Regulation;

(2) The respective addresses of the agent and the policyholder;

(3) The insurance or investment company or companies involved; and

(4) The facts which make such replacement advantageous to the policyholder.

Section 7. DUTIES OF INSURERS.

Each insurer shall:

(1) Inform its field representatives of the requirements of this Regulation;

(2) Require with or as a part of each application for life insurance a statement signed by the applicant as to whether such insurance will replace existing life insurance;

(3) Require in connection with each application for life insurance a statement signed by the agent as to whether, to the best of his knowledge, replacement is involved in the transaction.

(4) Where a replacement is involved:

(a) require with or as a part of each application a list prepared by the agent representing, to the best of his knowledge, all of the existing life insurance policies proposed to be replaced;

(b) obtain a copy of any proposal used, the completed 'Comparison Statement,' proof of the receipt by the applicant of the 'Notice to Applicants Regarding Replacement of Life Insurance' and the name of each insurer whose insurance is being replaced.

(c) *immediately notify any insurer whose insurance is being replaced* and upon request furnish within 15 working days a copy of any proposal used and the completed 'Comparison Statement';

(d) examine any proposal used and the completed 'Comparison Statement' and ascertain that the latter meets the requirements of this Regulation;

(e) maintain in a central file copies of any proposal used, the completed 'Comparison Statement,' proof of receipt by the applicant of the 'Notice to Applicants Regarding Replacement of Life Insurance' and the applicant's signed statement with respect to replacement in its home office for at least three years or until the conclusion of the next succeeding regular examination by the Insurance Department of its state of domicile, whichever is later.

Any insurer which receives notice that its existing insurance may be replaced shall maintain copies of such notification on its premises, indexed by insurer notifying it of such replacement, for three years or until the conclusion of the next regular examination conducted by the Insurance Department of its state of domicile, whichever is later."

zens . . . Constitutional guarantees of freedom of expression and of contract must yield to permit the rendition of such degree as is necessary for the reasonable protection of the public. See Art. I, Secs. 8 and 16, Constitution of Texas (Interpretive Commentary, Vol. 1, Vernon's Texas Constitution, pp. 243–245, and p. 373); *Gitlow v. New York,* 268 U.S. 652, 666–668, 45 S.Ct. 625, 69 L.Ed. 1138; *Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 708, 51 S.Ct. 625, 75 L.Ed. 1357; *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 150, 87 S.Ct. 1975, 18 L.Ed.2d 1094; *E. F. Drew & Co. v. Federal Trade Commission,* 235 F.2d 735, 740 (2d Cir. 1956) . . ."

We hold the State's concern for protecting the public from unscrupulous or negligent agents is superior to any freedom or right of privacy lost by appellants.

Appellants' "equal protection" and "due process" arguments must fail.

■ Section 9 of the regulation provides:

"This regulation applies to all insurers, soliciting life and annuity contracts in this State, regardless of the size or type of staff and to any solicitation made by them on their behalf. This includes personal solicitation and solicitations made by a newspaper, magazine, radio, television and direct mail."

The court in *Jefco, Inc. v. Lewis,* supra, considering an "equal protection" argument against a regulation adopted by the Savings and Loan Section of the Finance Commission of Texas said:

". . . the regulation is valid if it applies uniformly to all of those within a particular class . . . As with practically any rule which is applied uniformly to a class, resultant hardships will vary depending upon the individual situation of each member of that class. Such hardships, however, do not render the rule invalid."

The regulation in the instant case applies uniformly to all insurance companies soliciting life and annuity contracts in Texas.

■ The Supreme Court of the United States has disposed of appellants' "due process" argument when it said in *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955):

"'The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought . . . We emphasize again what Chief Justice Waite said in *Munn v. Illinois,* 94 U.S. 113, 134, 24 L.Ed. 77, 87, 'For protection against abuses by legislatures the people must resort to the polls, not to the courts.'"

Appellants challenge Section 8 of the regulation as being a penalty provision and unconstitutional because of its vagueness. Also, appellants argue Section 8 does not establish definite standards with which conduct can be conformed by those regulated thereunder.

Section 8(1) states:

"Any insurer, agent, representative, officer or employee of such insurer failing to comply with the requirements of this regulation shall be subject to such penalties as may be appropriate under the Insurance Code of Texas."

■ This provision is not vague or indefinite and it expressly refers to the Texas Insurance Code for appropriate penalties for violators.

Section 8(2) provides:

"Policyholders and/or policyowners have the right to replace existing life insurance after indicating in or as a part of application for new life insurance that such is not their intention; however, patterns of such actions by policyholders and/or policyowners of the same insurer and/or agent shall be deemed prima facie evidence of the insurers and/or agent's knowledge that replacement was intended in connection with the transactions, and such patterns of action shall be deemed prima facie evidence of the insurer's and/or agent's intent to violate this regulation."

Appellant contends the term "patterns of action" does not establish sufficiently definite standards with which conduct can be conformed by those regulated.

■ The test of whether a standard provided in a regulation is constitutional is whether the idea embodied in the phrase is reasonably clear. *Key Western Life Insurance Company v. State Board of Insurance,* 163 Tex. 11, 350 S.W.2d 839 (1961); *Jordan v. State Board of Insurance,* 160 Tex. 506, 334 S.W.2d 278 (1960).

Federal courts interpreting the phrase "pattern of practice" of discrimination under the Civil Rights Act of 1968, 42 U.S. C.A. § 3601 et seq. have said as expressed in *United States v. West Peachtree Tenth Corporation,* 437 F.2d 221 (5 Cir. 1971):

".   .   . The words 'pattern or practice' were not intended to be esoteric words of art. There is nothing magic in their meaning. *United States v. Mayton,* 5 Cir. 1964, 335 F.2d 153, 158–159. To be sure, they were intended to encompass more than an 'isolated or accidental or peculiar event.' See Hearings on H.R. 10327 Before the House Committee on the Judiciary, 86th Cong., 2d Sess. 13; *United States v. Mayton,* supra, at 158–159."

■ We hold the phrase "pattern of action" is reasonably clear as used in the instant regulation and embodies the same idea as expressed by the federal courts in their interpretation of the phrase "pattern or practice," and meets the test of constitutionality as announced by the Texas courts. See also *Sportatorium, Inc. v. State,* 115 S.W.2d 483 (Tex.Civ.App.—Dallas 1938, writ dism'd).

We have considered and overrule all points of error presented by the appellants.

The judgment is affirmed.