Coke L. **GAGE** et al., Appellants,

v.

**RAILROAD COMMISSION of Texas et al., Appellees.**

No. B–8044.

Supreme Court of Texas.

May 23, 1979.

Rehearing Denied June 20, 1979.

· Small, Craig and Werkenthin, C. C. Small, Jr., Austin, for appellants.

Scott & Douglass, Frank Douglass, Ivan D. Hafley and Lloyd A. Broussard, Mark White, Atty. Gen., Ralph T. Aldave, Asst. Atty. Gen., Austin, for appellees.

McGEE, Justice.

This is a direct appeal from a trial court judgment which refused to enjoin a proration order of the Texas Railroad Commission. The question presented for our determination is whether the commission acted within its lawfully delegated authority when it reinstated proration of allowable gas production in a certain field. We are of the opinion that the commission did not act within its authority. The judgment of the trial court will be reversed and the cause remanded to that court with instructions to render judgment in accordance with this opinion.

This appeal involves the Boonsville (Bend Conglomerate Gas) field which is geologically situated in the Atoka Conglomerate and underlies portions of Jack, Wise, Parker and Denton Counties, Texas. On November 1, 1957 the commission rendered special order No. 9–36,420, consolidating certain previously designated gas fields into the Boonsville field for proration and other regulatory purposes. Other gas fields were consolidated into Boonsville and operation rules were amended in 1960, 1962, 1963 and 1966.[1]

Prior to August 1, 1975 the Mitchell Energy Corp., one of the appellees in this case, requested the commission to suspend further proration of gas production in the consolidated Boonsville field. After notice and hearing, the commission suspended the allocation formula "until conditions change sufficient to require reinstatement." Several new wells were subsequently drilled and completed and all wells were left to produce their respective capacities.

Sometime later, Mitchell Energy Corp. requested the commission to call a hearing to reinstate proration in Boonsville, contending that many small-tract wells were producing at a rate which allowed them to produce more than their recoverable gas in

place. Notice was issued, and the commission conducted a hearing to consider: (a) whether proration should be reinstated; (b) alternative allocation formulae to benefit the small-tract wells; and (c) the proper size of the optional drilling units. Over objections that the commission had no authority to issue any proration orders, special order No. 9–67,936 was issued on July 31, 1978, which reinstated proration in the subject field and amended the field rules to reflect a new allocation formula. This order was affirmed by a district court in Travis County on appeal by the Gage group.[2]

The Gage group, with the exception of Stewert Development Co., has filed a direct appeal in this court. The commission has filed a reply brief and Mitchell Energy Corp. and Enserch Exploration, Inc., intervenors below, have also replied in a separate brief. The Gage group contends that the lower court erred in refusing to hold that special order No. 9–67,936 (July 31, 1978) was unlawful under section 85.055 and subchapter (D) of chapter 86 of the Texas Natural Resources Code as an unauthorized attempt to prorate gas production in numerous separate and distinct common reservoirs on a consolidated basis. The response of the commission, Mitchell and Enserch is two-fold. First, they urge that the Gage group's contention constitutes an impermissible collateral attack on the commission's 1957 order which consolidated Boonsville for proration and other purposes. Second, and alternatively, they argue that the findings of fact in 1978 reinstatement order support the conclusion that Boonsville "should be treated as one common reservoir of natural gas."

We do not agree that the Gage group has brought a collateral attack on the 1957 order. Instead, it appears that they have contended below, as they contend now, that

1. The orders will be collectively referred to as the 1957 order.

2. For the purposes of convenience the plaintiffs, and appellants here, will be referred to as the Gage group. Along with Mr. Coke L. Gage, plaintiffs were Crawford Energy Co., Mote Re-

sources, Inc., Nueve Operating Co. of Texas, Ryder Scott Management Co., Stewert Development Co., Teal Petroleum Co. and Wolfson Oil Co. Stewert Development Co., however, has not participated in an appeal of this case from the trial court judgment.

the commission was without statutory authority to issue the 1978 order reinstating proration. Accordingly, it is the 1978 order which is in issue and which we must examine in light of statutory and case law.

■ Under the Texas Administrative Procedure Act, a court may overturn a commission order if it is found that the substantial rights of the appellant have been prejudiced because the "administrative findings, inferences, conclusions, or decisions" are *"in excess of the statutory authority"* of the commission. Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19(e)(2); *see* Tex.Natural Resources Code § 85.241. Pertinent to our inquiry here is the natural resources code which authorizes the commission to prorate the production of natural gas only under certain defined circumstances. Section 85.055 of the Code specifically provides:

(a) If full production from wells producing gas *only from a common source of supply of gas* in this state is in excess of the reasonable market demand, the commission shall inquire into the production and reasonable market demand for the gas and shall determine the allowable production from the common source of supply.

(b) The allowable production from a *common source of supply* is that portion of the reasonable market demand that can be produced without waste.

(c) The commission shall allocate, distribute, or apportion the allowable production from the *common source of supply* among the various producers on a reasonable basis and shall limit the production of each producer to the amount allocated or apportioned to the producer.

Tex.Natural Resources Code § 85.055 (emphasis added). Section 86.081 further provides:

For the protection of public and private interests, the commission shall prorate and regulate the daily gas well production from *each common reservoir* to:

(1) prevent waste; and

(2) adjust the correlative rights and opportunities of each owner of gas in a *common reservoir* to produce and use

or sell the gas as permitted in this chapter.

*Id.* § 86.081 (emphasis added). "Common reservoir" is defined by the Code to mean "all or part of any oil or gas field or oil and gas field that comprises and includes any area that is underlaid or that, from geological or other scientific data or experiments or from drilling operations or other evidence, appears to be underlaid by a common pool or accumulation of oil or gas or oil and gas." *Id.* § 86.002(4). Under the Code "common source of supply," "common pool," and "common reservoir" are synonymous terms. *Id.* § 85.001(2).

In *Railroad Commission v. Graford Oil Corp.,* 557 S.W.2d 946 (Tex.1977) we recognized that the commission had no statutory authority to combine several common reservoirs into a single field for proration purposes. Instead, the legislature had only authorized the commission to prorate the daily gas production from *"each common reservoir"* in order to prevent waste or to adjust correlative rights. *Id.* at 949–50. This court stated:

Since we hold that a common reservoir consists of a common pool or a common accumulation of hydrocarbons, separate and distinct pools of oil or gas, which are not connected, and which do not communicate with one another, do not constitute a "common reservoir." Each separate pool or accumulation is, under the statute, a separate reservoir, even though several different reservoirs may underlie a single gas-producing area . . . . Consequently, the consolidation order in this [case] cannot stand unless the consolidated area is found to be a common pool or common accumulation of hydrocarbons.

*Id.* at 950; *accord, Railroad Commission v. Shell Oil Co.,* 380 S.W.2d 556, 559 (Tex. 1964); *Benz-Stoddard v. Aluminum Co. of America,* 368 S.W.2d 94, 97 (Tex.1963). After examining the commission's findings of fact, this court affirmed the trial court injunction of the order, stating that the only reasonable conclusion that could be drawn was that the subject field consisted of sev-

eral separate common reservoirs. 557 S.W.2d at 951.

We now turn to the 1978 commission order which reinstated proration in the Boonsville field. At this juncture we note that a final decision of the commission "must include findings of fact and conclusions of law, separately stated." If a fact finding is set forth in statutory language, "[it] must be accompanied by a concise and explicit statement of underlying facts supporting the findings." Tex.Rev.Civ.Stat. Ann. art. 6252–13a, § 16(b). The findings must be clear and specific, not couched in terms other than findings, not mere conclusions, references to, recitals or summations of evidence. *Imperial American Resources Fund, Inc. v. Railroad Commission,* 557 S.W.2d 280, 285–86 (Tex.1977). They should be such that a reviewing court can fairly and reasonably say that they support the "ultimate findings of fact required for [the] decision." *Railroad Commission v. Graford Oil Corp.,* 557 S.W.2d 946, 950 (Tex. 1977); *accord, Miller v. Railroad Commission,* 363 S.W.2d 244, 245–56 (Tex.1962).

The pertinent fact findings of the 1978 order are set forth in the margin.[3] Fact finding 16 states that Boonsville is a "common source of supply of natural gas." Since this finding is couched in statutory language, section 16(b) requires that it be accompanied by a concise and explicit state- ment of the underlying facts to support it. We do not find such support. To the contrary, finding 6 affirmatively states that a "majority of the wells in Boonsville perforate *one or more* zones of porosity." Finding 7 also recognizes that Boonsville is composed of many zones, and that it is highly *lenticular* in nature.[4] Both findings state that many of the zones are in pressure communication through the well bore.

The only reasonable conclusion that we can draw from a study of these findings is that Boonsville is in truth a consolidation of several separate and distinct "common reservoirs." Moreover, in *Graford* we held that separate reservoirs could not be transformed into one common reservoir as defined by statute through artificial means. Rather, the statute is drawn in terms of *natural communication* between producing sands or zones. The statute is not met where communication among the "vertically-separated producing zones" is through well completion in two or more zones. 557 S.W.2d at 953.

We are further of the opinion that any difficulty in delineating a field boundary as expressed by finding 7 does not authorize the commission to consolidate separate reservoirs for proration purposes where such authority does not otherwise exist. While we are appreciative of the enormous regulatory and technological

---

**3.** 6. The operators of the majority of the wells in the Boonsville (Bend Conglomerate Gas) Field perforate one or more zones of porosity and commingle in the well bore.

7. If each zone of porosity was required to be produced separately, an operator could not do so economically and in some instances an operator could not physically separate each zone of porosity due to the highly lenticular nature of the field and the necessity of stimulation by sand frac operations. Hundreds of wells in the field have one or more zones of porosity open within a well bore which permits all such zones to be in pressure communication with each other.

16. The Boonsville (Bend Conglomerate Gas) Field is a common source of supply of natural gas and is an extremely large non-associated gas reservoir covering almost all of Wise County and portions of Jack, Parker, and Denton Counties.

**4.** In the *Graford* case, *supra* at 951 n. 5, we approved the following:

A "lens" in oil and gas terminology has been defined as: A relatively porous, permeable, irregularly shaped, sedimentary deposit surrounded by impervious rock. The lens may serve as a local center of concentration of oil in the formation. A lenticular sedimentary bed that pinches out in all directions.

And a "lenticular reservoir" has been defined as:

A lens of porous and permeable sediments surrounded by strata of low permeability, often shale. There may be a number of such lens unconnected with each other in an area. Such reservoirs are often small, but completely saturated with oil or gas. The shoestring sands of the mid-continent region are notable examples of lenticular reservoirs.

7 William & Meyers, *Oil & Gas Law, Oil & Gas Terms,* page 318 (1976).

problems that confront the commission in the Atoka Conglomerate, it is settled that separate and distinct "common reservoirs" cannot be consolidated into a single field for administrative convenience in prorating the area. *Railroad Commission v. Graford Oil Corp., supra* at 950; *see Railroad Commission v. Shell Oil Co.,* 380 S.W.2d 556, 559 (Tex.1964); *Benz-Stoddard v. Aluminum Co. of America,* 368 S.W.2d 94, 97 (Tex. 1963).

■ Since the 1978 order affirmatively reveals that the commission was without statutory authority to reinstate proration or issue proration orders, the trial court erred in refusing to enjoin the commission's order. The judgment of the trial court is reversed and the cause remanded to that court with instructions to render judgment in accordance with this opinion.