Martha Regina Birzer LUNSFORD, Appellant,

v.

BOARD OF NURSE EXAMINERS FOR the STATE of Texas, Appellee.

No. 13548.

Court of Appeals of Texas, Austin.

March 3, 1983.

Rehearing Denied March 30, 1983.

Nicolai von Kreisler, Alvis, Carssow & von Kreisler, Austin, for appellant.

Mark White, Atty. Gen., Bill Campbell, Asst. Atty. Gen., Austin, for appellee.

Before PHILLIPS, C.J., and EARL W. SMITH and BRADY, JJ.

PHILLIPS, Chief Justice.

Appellant appeals the judgment of the district court affirming an order of the Board of Nurse Examiners, which had suspended appellant's license to practice as a nurse in the State of Texas for one year.

On March 9, 1980, appellant was employed as a registered nurse at the Willacy County Hospital in Raymondville, Texas. On this date, Donald Wayne Floyd, suffer-

ing from chest pains, sought medical assistance at the Willacy County Hospital. Floyd's companion, Frances Farrell, entered the hospital with Floyd, and after leaving Floyd in the waiting room, sought medical assistance from further within the hospital structure. Floyd, travelling through Raymondville with Farrell on their way to Houston, complained of great pain and pressure in his chest accompanied by a pain and numbness radiating down his left arm. Farrell also testified that Floyd was extremely anxious and quite grey in color. Farrell, in her search for medical help, found a physician sitting at the nursing station outside one of the treatment rooms. She requested his assistance, but was instructed to seek help from a nurse because he was quite busy. Farrell insisted that the physician help Floyd, who she explained was suffering from chest pains, but was again instructed to seek the assistance of the nurse on duty.

Appellant Nurse Lunsford then approached the nurse's station and was instructed by the physician to send Floyd onto Valley Baptist Hospital in Harlingen, twenty-four miles away. In instructing appellant, the physician pointed to the hospital's only cardiac care equipment then in use on another patient. Appellant then went into the waiting room and found Floyd lying on a table complaining of his chest pains, which were also radiating into and under his arms. After questioning Floyd, appellant learned that he had not eaten anything unusual that day, nor had he engaged in any heavy physical exercise. Although she admittedly suspected "cardiac involvement," she failed to take Floyd's vital signs. She instead instructed Farrell to drive Floyd the twenty-four miles to Valley Baptist Hospital in Harlingen. She instructed Farrell to "speed" there and to drive with the auto's emergency flashers on. Appellant also instructed Farrell to use the auto's c.b. radio to summon aid on the way into Harlingen. The last thing appellant did was ask Farrell if she knew C.P.R. since there was a chance that she might have to use it while in route to Harlingen. Appellant then sent them on their way.

Floyd died shortly thereafter, less than five miles from the Willacy County Hospital in Raymondville.

The Board of Nurse Examiners, pursuant to Tex.Rev.Civ.Stat.Ann. art. 4525(a)(9) (Supp.1982–83),[1] suspended appellant's license to practice as a nurse in the State of Texas for one year,[2] after a hearing on appellant's actions with respect to Floyd's death. The Board found that appellant's conduct had been "unprofessional and dishonorable conduct likely to injure the public."

Appellant challenges the district court's judgment affirming the administrative order of suspension because (1) the order is not supported by substantial evidence, (2) appellant had no legal duty to care for Floyd, (3) the order is based upon an unconstitutionally vague agency rule which fails to state when a nurse becomes responsible to care for a patient, and (4) the order is void because (a) an essential finding of fact was omitted, and (b) the Board failed to make an accompanying concise and explicit statement of the underlying facts supporting the ultimate finding.

We overrule all points of error and affirm the judgment below.

## I.

■ The primary question is whether the evidence as a whole is such that reasonable

---

1. Texas Rev.Civ.Stat.Ann. art, 4525(a)(9) (Supp.1982–83) states:

   The Board of Nurse Examiners ... may suspend for any period not to exceed 2 years ... the license or certificate of any practitioner of professional nursing for any of the following reasons:

   \* \* \* \* \* \*

   (9) Unprofessional or dishonorable conduct which, in the opinion of the Board, is likely to deceive, defraud, or injure patients or the public.

2. Appellant's license was revoked for a period of one year. This sentence was probated on the unique condition that she remain professionally employed as a nurse, and that her future employer make quarterly reports on her job performance in assessing patient's medical conditions.

**394**

minds could have reached the conclusion the Board must have reached in justifying its order suspending appellant's license. *Dotson v. Board of Medical Examiners,* 612 S.W.2d 921 (Tex.1981). The quantity of the evidence is not important. "In practical result it has not taken much evidence under our discussions to qualify as substantial. In fact, the evidence may be substantial and yet greatly preponderate the other way." *Lewis v. Metropolitan Savings and Loan Ass'n.,* 550 S.W.2d 11, 13 (Tex.1977). In reviewing all the evidence, we presume that the agency order is valid and supported by substantial evidence and the burden of proving otherwise is on the person challenging the agency order. *Vandygriff v. First Sav. & Loan Ass'n. of Borger,* 617 S.W.2d 669 (Tex.1981); *Railroad Commission v. Entex, Inc.,* 599 S.W.2d 292 (Tex.1980).

The testimony adduced at the hearing before the Board shows that Floyd presented himself, complaining of chest pains, to appellant at the hospital where appellant was employed as a registered nurse, that appellant turned him away to another hospital twenty-four miles away, and that Floyd died minutes thereafter.

Appellant contends that she had no choice but to send Floyd onto the other hospital. Appellant claims that the hospital policy precluded Floyd's treatment. It appears that the hospital had a policy to send all patients to Valley Baptist Hospital unless they had a physician on the hospital's staff or unless it was a "life-death situation."[3] Clearly Floyd was in such a "life-death situation," and was not precluded treatment by the hospital's policy. Appellant also claims that it would have been futile to take Floyd's vital signs and inform the on-duty physician since the physician had already ordered appellant to send Floyd onto Valley Baptist Hospital. At the hearing, the physician admitted telling the appellant to send

Floyd to Harlingen, but stated that he had no idea of Floyd's fatal instability since the only information he had was that Floyd was having chest pains. The physician also testified that the cardiac E.K.G. equipment was available to use on Floyd, along with various medications.

■ Appellant, in violation of Board Rule 22 T.A.C. § 217.13 [old rule 388.04.00.-011(f)]—which requires a registered nurse to evaluate the status of a patient and to institute appropriate nursing care to stabilize a patient's condition and prevent complications—failed to (1) assess Floyd's condition, (2) inform the attending physician of the "life-death" nature of Floyd's instability, and (3) take appropriate measures to stabilize Floyd's condition and prevent his demise. This clearly appears to be "unprofessional and dishonorable conduct likely to injure the public." Accordingly, we find reasonable minds could agree on the Board's order revoking appellant's license, and therefore, such order was based upon substantial evidence.

## II.

■ Appellant next claims she had no "legal duty" to care for Floyd since he was not her "patient" or "client." Appellant contends that Texas law does not recognize a "nurse-patient" relationship. Initially, we hold that appellant's contentions that she owed Floyd no duty because Floyd was neither a patient of the hospital nor of the on-duty physician are without merit, since we hold that her duty to Floyd is not derivative from such a third party relationship. Her duty to Floyd stems from the privilege granted to her by the State of Texas in licensing her as a nurse, and therefore, could not be relieved by a hospital policy or a physician's order.

---

3. Although various protocols were supposedly promulgated at the time of Floyd's death, it is not necessary to determine if they were or were not provided to the employees of the hospital at this time, since, as will be explained within the opinion, the appellant owed the duty to Floyd through the receipt of her license from the State. This privilege was conditioned on her practicing her professional skills in a "professional and honorable" manner. Any policy, real or imagined, of her employer had no effect upon appellant's obligation to perform her job professionally and honorably. Her obligation to the public of this State far overrides any contractual agreement with her employer to act in a certain and prescribed manner.

This appeal deals with the suspension of a privilege, granted by the State, for appellant's "unprofessional and dishonorable conduct," which resulted in the death of an individual. When appellant received the privilege of being licensed as a nurse in this State, she entered into a covenant to serve the people of this State with all her professional skills and powers. This suit is not brought in contract or in tort by one individual who feels he or she has been wronged by appellant's action or inaction, but this suit is brought by the people of this State for appellant's violation of her contractual duties to them to always act in a professional and honorable manner.

As to appellant's claim that this State does not recognize a "nurse-patient" relationship, we draw appellant's attention to *Childs v. Greenville Hospital Authority,* 479 S.W.2d 399, 401–02 (Tex.Civ.App.1972, writ ref'd n.r.e.). In *Childs,* the court quotes Professor Prosser for the proposition:

> The problem of duty is as broad as the whole law of negligence, and ... no universal test for it has been formulated .... It is imbedded far too firmly in our law to be discharged, and no satisfactory substitute for it, by which the defendant's responsibility may be limited, has been devised. But, it should be recognized that duty ... is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection .... *No better general statement can be made, than that the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists.* [emphasis added]

Prosser, Law of Torts, Sec. 53, 3rd ed. (1964).

In *Childs,* a nurse refused a woman's entrance to a hospital when the woman was in deep labor, because the emergency room admitting physician ordered the ailing woman to seek help from her personal physician. The nurse had examined the pregnant woman and had explained to the emergency room admitting physician by phone the woman's medical status. The lawsuit revolved around the accuracy of the nurse's communication of the physician's instructions. The *Child's* court, in reversing the dismissal of the lawsuit by the trial court, expressly found that a "nurse-patient" relationship existed. The court based the relationship upon the defendant nurse's employment as a nurse at the hospital and her position to the expectant mother who came to the hospital in deep labor seeking her medical assistance. The court stated, "[r]easonable men would recognize and agree, as it seems to this court that (the nurse's) relation to (the patient) was attendant with responsibility, and that a person in the position of (the nurse) had a duty ...." 479 S.W.2d at 403. *See Armstrong v. Morgan,* 545 S.W.2d 45, 46–47 (Tex.Civ.App.1976, no writ); *Forney v. Memorial Hospital,* 543 S.W.2d 705 (Tex.Civ.App.1976, writ ref'd n.r.e.).[4]

Accordingly, we hold that a nurse situated such as appellant in this cause, has a duty to evaluate the medical status of the ailing person seeking his or her professional care, and to institute appropriate nursing care to stabilize a patient's condition and prevent further complications of physical and mental harm.

Therefore, appellant's point of error is overruled.

### III.

Appellant next contends that "Board Rule 388.04.00.011(f) is unconstitutionally

---

**4.** This State is not alone in holding that a "nurse-patient" relationship exists. *See Daniel v. St. Francis Cabrini Hospital of Alexandria, Inc.,* 415 So.2d 586 (La.1982); *Plutshack v. University of Minnesota Hospital,* 316 N.W.2d 1 (Minn.1982); *Vassey v. Burch,* 45 N.C.App. 222, 262 S.E.2d 865 (N.C.1980); *Hunsaker v. Boyeman Deaconess Foundation,* 179 Mont. 305, 588 P.2d 493 (Mont.1978); *Woods v. Row-* land, 41 Colo.App. 498, 592 P.2d 1332 (Colo. 1978); *Stone v. Sisters of Charity of House of Providence,* 2 Wash.App. 607, 469 P.2d 229 (Wash.1970); *Larrimore v. Homeopathic Hospital Assoc.,* 176 A.2d 362 (Del.1962); *Baur v. Mesta Mach. Co.,* 405 Pa. 617, 176 A.2d 684 (Pa.1962); *Ybarra v. Spangard,* 25 Cal.2d 486, 154 P.2d 687 (Ca.1944).

vague because it fails to state, when and under what circumstances one becomes a 'patient' or 'client,' which status triggers a nurse's duty to evaluate or intervene in that person's behalf."

This rule, now recodified as 22 T.A.C. § 217.13 states:

The term "unprofessional conduct that is likely to injure the public" means any act, practice, or omission that fails to conform to the accepted standards of the nursing profession and which results from conscious disregard for the health and welfare of the public and of the patient/client under the nurse's care and includes but is not limited to the conduct listed as follows:

(1) Failing to assess and evaluate a patient's/client's status or failing to institute nursing intervention which might be required to stabilize a patient's/client's condition or prevent complications.

■ The general rule is that a statute is unconstitutionally vague only when a required course of conduct is stated in terms so vague that men of common intelligence cannot be sure what is required; that is, when there is substantial risk of miscalculation by those whose acts are subject to regulation. *Texas Liquor Control Board v. Attic Club, Inc.,* 457 S.W.2d 41, 45 (Tex. 1970), *app. dismd.,* 400 U.S. 986, 91 S.Ct. 459, 27 L.Ed.2d 435 (1971); *Browning-Ferris v. Texas Department of Health,* 625 S.W.2d 764 (Tex.Civ.App.1981, writ ref'd n.r.e.) The primary question is if the language of the questioned law is clear enough to give reasonable notice of what act is required. *Texas State Bd. of Barber Examiners v. Beaumont Barber College,* 454 S.W.2d 729 (Tex.1970); *Lloyd A. Fry Roofing Co. v. State,* 541 S.W.2d 639 (Tex.Civ. App.1976, writ ref'd n.r.e.). We initially presume the law is constitutional and place the burden on the person attacking the law's validity to prove otherwise. *Robinson v. Hill,* 507 S.W.2d 521 (Tex.1974); *Smith v. Craddick,* 471 S.W.2d 375 (Tex.1971). These rules and presumptions apply equally to challenged agency rules and regulations.

*Texas Liquor Control Board v. Attic Club, Inc., supra; Railroad Commission v. Shell Oil Co.,* 139 Tex. 66, 161 S.W.2d 1022 (Tex. 1942); *Brown v. Humble Oil & Refining Co.,* 126 Tex. 296, 87 S.W.2d 1069 (Tex. 1935); *Nunley v. State Board of Insurance,* 552 S.W.2d 624 (Tex.Civ.App.1977, writ ref'd n.r.e.).

■ Appellant cites no applicable authority in support of her contention that the agency rule is unconstitutional and in reviewing the Board's rule, we find that it sufficiently apprises reasonable minds of what conduct is prescribed. Appellant's argument that the rule fails to state when the duty to act arises pales in the light of the clear language of the rule, the facts advanced in this case, and our previous holding in this case that such a duty exists when an ailing person seeks medical assistance from a person situated such as appellant in this cause, and after assessment, the person whose help is sought determines that he or she must institute appropriate nursing care to stabilize the ailing person's condition and to prevent complications of further physical or mental harm.

Appellant has failed to rebut the presumption that the agency rule is constitutional, and in our review of the rule we hold that it sufficiently apprises reasonable minds of what actions are prescribed by the mandate of the rule; accordingly, we overrule appellant's point of error.

## IV.

Appellant lastly contends that the Board's order is void upon its face because it fails to make an express finding that Floyd was appellant's "patient" or "client," and that it fails to comply with Tex.Rev. Civ.Stat.Ann. art. 6252–13a, § 16(b) (Supp. 1982–83), and is, therefore, arbitrary and capricious because it does not award appellant notice of what facts her license's suspension is based.

The finding of fact that appellant complains of states:

That, on or about the above date, although Donald Wayne Floyd was

presented to Martha Regina Lunsford at the Willacy County Hospital suffering from chest pains, the said nurse failed to assess the physical well being of Donald Wayne Floyd and further failed to intervene and institute appropriate nursing action, which might have been required to stabilize Mr. Floyd's condition and or prevent complications.

█ Initially, we must state that we are unable to see how appellant is possibly harmed by this finding of fact in that it allegedly fails to give her notice of what actions caused her license's revocation. We also fail to see how the Board, not required by its own rules to make findings of fact, failed to meet any statutory duty imposed by § 16(b).

As shown before, Board Rule 217.13 [old rule 388.04.00.011(f)], states that a nurse shall evaluate a patient's status and institute appropriate nursing intervention which might be required to stabilize a patient's condition and prevent complications. It seems quite implicit in the complained finding that Floyd was appellant's patient, as contemplated by the Rule, and it seems unnecessary to require the agency to make additional findings of fact. Although the better practice might have been to include an express finding that Floyd was appellant's patient, we fail to see how the lack of such a finding makes the agency findings and order void upon its face.

█ The Board need not comment on every aspect of the record, even if such comment may be relevant to the Board's ultimate findings; the Board need only present such underlying facts which a reviewing court can find fairly and reasonably support the ultimate findings which underlie the Board's decision to revoke appellant's license. *State Banking Board v. Valley National Bank,* 604 S.W.2d 415 (Tex.Civ.App. 1980, writ ref'd n.r.e.); *Mineola State Bank v. First National Bank of Mineola,* 574 S.W.2d 246 (Tex.Civ.App.1978, writ ref'd n.r.e.).

Appellant also complains that the finding of fact is not accompanied by a concise and explicit statement of the underlying facts supporting the complained finding of fact.

Texas Rev.Civ.Stat.Ann. art. 6252–13a, § 16(b) states:

A final decision must include findings of fact and conclusions of law, separately stated. *Findings of fact, if set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings.* [emphasis added]

█ We disagree that this finding of fact is not sufficient to meet the requirements of § 16(b). After stripping away all of the statutory language from the finding of fact, the following concise and explicit statement emerges:

That, on or about the above date, although Donald Wayne Floyd was presented to Martha Regina Birzer Lunsford at the Willacy County Hospital suffering from chest pains . . . .

This statement certainly awards appellant and the reviewing courts notice of facts which "fairly and reasonably support the ultimate findings of fact required for the decision." *Gage v. Railroad Commission,* 582 S.W.2d 410, 414 (Tex.1979); *Railroad Commission v. Graford Oil Corp.,* 557 S.W.2d 946, 950 (Tex.1977); *Murphy v. Rowland,* 609 S.W.2d 292, 295 (Tex.Civ.App. 1980, writ ref'd n.r.e.). Appellant can not be heard to complain that she does not know for what acts or omissions her license was suspended.

Therefore, we overrule appellant's last point of error and since all appellant's points of error have been overruled, we affirm the judgment below and sustain the revocation of appellant's license.