COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 HELEN ESTRADA, INDIVIDUALLY
 AND ON BEHALF OF ALL 
 WRONGFUL DEATH BENEFICIARIES 
 AND AS REPRESENTATIVE OF THE 
 ESTATE OF RICHARD ESTRADA, 
 DECEASED,
  
                                    
 Appellant,
  
 v.
  
 ENCARNACION MIJARES, N.P. AND
 JEANETTE TAN, M.D.,
  
                                    
 Appellees. 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
  
 '
    
 '
  
 '
  
 
 
  
  
  
  
                   No. 08-10-00290-CV
  
                          Appeal from
  
 346th District
 Court
  
 of El Paso County,
 Texas
  
 (TC #2010-3305)
 
 


O P I N I O N

 

This appeal arises from a medical malpractice suit against a nurse
practitioner, Encarnacion Mijares, and her employer, Jeanette Tan, M.D., on a
theory of vicarious liability.  The trial
court granted summary judgment in favor of Mijares on the ground that she did
not have a nurse-patient relationship with Richard Estrada.  For the reasons that follow, we affirm.

FACTUAL SUMMARY

On July 21, 2007, Richard Estrada was admitted to Del Sol Medical Center
by his primary physician, James Gibson, M.D. due to complaints of a cough and
shortness of breath.  The following day,
Dr. Gibson requested a pulmonary evaluation from the on-call
pulmonologist.  Ahmad M. Hajj, M.D was
covering for Dr. Tan, meaning that he was seeing all of Dr. Tan’s ICU patients at
Del Sol in addition to the new consults.

Encarnacion Mijares is a nurse practitioner.  The summary judgment evidence related to
Mijares’ motion for summary judgment shows that Mijares worked for Dr. Tan as a
nurse practitioner in 2007 and did not work for Dr. Hajj.[1]  On July 22, 2007, Mijares was at the hospital
seeing some of Dr. Tan’s existing patients when one of the nurses told her
about the consult for Dr. Tan.  Mijares
told the nurse that Dr. Tan was not taking calls and Dr. Hajj was on-call.  The nurse subsequently told Mijares that a
call had been made to Dr. Hajj’s answering service.  Mijares telephoned Dr. Hajj “out of courtesy”
to let him know about the pulmonary consult. 
Mijares relayed to Dr. Hajj the information in Estrada’s chart,
including the lab results and the results of the CT scan of the lungs.  Mijares then transcribed Dr. Hajj’s verbal orders
onto Estrada’s chart.  The record does
not include a copy of the order itself but Mijares stated during her deposition
that Dr. Hajj ordered Rocephin, one gram IV piggyback every 24 hours; “Neb”
treatments with Xopenex, 0.63, and Atrovent unit dose via E-Z pack four times a
day, as needed, and sputum for gram stain and CNS.  He also ordered the hospital to document the
O2 saturation in the progress notes.  Both
Mijares and Dr. Hajj signed the orders. 
Mijares explained in her deposition that she could not write orders at
the hospital and hospital policy required that the consulting doctor
“countersign” the verbal orders.  Dr.
Hajj never asked Mijares to evaluate Estrada. 

Dr. Gibson discharged Estrada from the hospital on July 23, 2007.  The following nursing note is found in
Estrada’s chart for July 23, 2007:  “M.D.
Gibson has seen PT down in x-ray.  He has
given the OK to DC PT home today. 
[Mijares] has been notified.  She
has spoken with M.D. Hajj.  He has given
the OK to DC PT.”  Mijares specifically denied
having any conversation with the nurse or Dr. Hajj regarding the discharge of
Estrada, explaining that she would not have given the order because Estrada was
not her patient.  Dr. Hajj recalled
speaking to the nurse at the hospital about the discharge but he did not recall
speaking to Mijares.  

Estrada followed up with Dr. Gibson following his discharge, but he had a
heart attack on September 2, 2007 and died. 
Helen Estrada, individually and on behalf of the wrongful death
beneficiaries, and as the representative of the estate of her husband, filed
suit against Dr. Gibson, Dr. Hajj, Dr. Tan, and Mijares, alleging that the
defendants knew or should have known that Estrada was at risk of coronary heart
disease and were negligent in failing to properly diagnose and treat him for
heart disease.  Mijares filed a motion
for summary judgment on the sole ground that she did not have a nurse-patient
relationship with Estrada.  The trial
court granted the motion and severed the claims against Mijares and Dr. Tan
from the remaining claims.  

NURSE-PATIENT
RELATIONSHIP

            In
her sole issue on appeal, Appellant contends that the trial court erred by
granting summary judgment because Mijares failed to conclusively prove that she
did not have a nurse-patient relationship with Estrada.  Alternatively, Appellant argues that a fact
issue precludes the granting of summary judgment.

Standard of Review

The standard of review for traditional summary judgment under Tex.R.Civ.P. 166a(c) is well
established.  Nixon v. Mr. Property Management Company, Inc., 690 S.W.2d 546, 548
(Tex. 1985).  The moving party carries
the burden of showing there is no genuine issue of material fact and it is
entitled to judgment as a matter of law.  Diversicare
General Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2005); Browning v. Prostok, 165 S.W.3d 336, 344
(Tex. 2005).  Evidence favorable to the
non-movant will be taken as true in deciding whether there is a disputed issue
of material fact.  Fort Worth Osteopathic Hospital, Inc. v. Reese, 148 S.W.3d 94, 99
(Tex. 2004); Tranter v. Duemling, 129
S.W.3d 257, 260 (Tex.App.--El Paso 2004, no pet.).  All reasonable inferences, including any
doubts, must be resolved in favor of the non-movant.  Fort
Worth Osteopathic Hospital, 148 S.W.3d at 99.  A defendant is entitled to summary judgment if
the evidence disproves as a matter of law at least one element of each of the
plaintiff’s causes of action or if it conclusively establishes all elements of
an affirmative defense.  D. Houston, Inc. v. Love, 92 S.W.3d 450,
454 (Tex. 2002); Randall’s Food Markets,
Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995).  Once the defendant establishes a right to
summary judgment as a matter of law, the burden shifts to the plaintiff to
present evidence raising a genuine issue of material fact.  City of
Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678-79 (Tex. 1979);
Scown v. Neie, 225 S.W.3d 303, 307
(Tex.App.--El Paso 2006, pet. denied). 
We review the grant or denial of a traditional motion for summary
judgment de novo.  Valence
Operating Company v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Texas Integrated Conveyor Systems, Inc. v.
Innovative Conveyor Concepts, Inc., 300 S.W.3d 348, 365 (Tex.App.--Dallas
2009, pet. denied).

Existence of a Duty

In a medical malpractice claim, the plaintiff must prove four elements:  (1) a duty by the physician/nurse/hospital to
act according to applicable standards of care; (2) a breach of the applicable
standard of care; (3) an injury; and (4) a causal connection between the breach
of care and the injury.  Morrell v. Finke, 184 S.W.3d 257, 271
(Tex.App.--Fort Worth 2005, pet. denied); Cruz
v. Paso Del Norte Health Foundation, 44 S.W.3d 622, 629-30 (Tex.App.--El
Paso 2001, pet. denied).  The existence
of a duty is a threshold question of law which must be decided before the issue
of standard of care arises.  Lection v. Dyll, 65 S.W.3d 696, 704
(Tex.App.--Dallas 2001, pet. denied), citing
St. John v. Pope, 901 S.W.2d 420, 424 (Tex. 1995).

In St. John v Pope, the Supreme
Court explained that medical malpractice developed as a theory of liability
discrete from common-law negligence and is imbued with both contract and tort
principles.  St. John, 901 S.W.2d at 423. 
Medical malpractice also differs from ordinary negligence in the
circumstances under which a duty arises. 
St. John, 901 S.W.2d at
423.  In an ordinary negligence case, the
duty to refrain from negligently injuring others requires no prior
relationship.  Id.  Professionals, on other
hand, do not owe a duty to exercise their particular talents, knowledge, and
skill on behalf of every person they encounter. 
Id.  “As is true of all callings, physicians are
not obligated to practice their profession or render services to everyone who
asks.”  Id.  It is only with the
physician’s express or implied consent that the physician-patient relationship
is created.  Id.  The court held in St. John that the duty to treat the
patient with proper professional skill flows from the consensual relationship
between the patient and physician, and only when that relationship exists can
there be a breach of a duty resulting in medical malpractice.  Id.  Creation of the physician-patient
relationship does not require the formalities of a contract.  Id.
at 424.  The fact that a physician does
not deal directly with a patient does not preclude the existence of a
physician-patient relationship.  Id. 
If there is no prior relationship between the physician and the patient,
there must be some affirmative action on the part of the physician to treat the
patient to create such a relationship.  Gross v. Burt, 149 S.W.3d 213, 221
(Tex.App.--Fort Worth 2004, pet. denied); Majzoub
v. Appling, 95 S.W.3d 432, 436 (Tex.App.--Houston [1st Dist.] 2002, pet.
denied); Lection, 65 S.W.3d at 705.

Texas courts have recognized the existence of the nurse-patient
relationship but have not written extensively about how it is created in the
context of a medical malpractice claim.  See Lunsford
v. Board of Nurse Examiners for the State of Texas, 648 S.W.2d 391, 395
(Tex.App.--Austin 1983, no writ); Childs
v. Greenville Hospital Authority, 479 S.W.2d 399, 401-02 (Tex.Civ.App.--Texarkana
1972, writ ref’d n.r.e.).  Citing Lunsford, Appellant suggests that Mijares’
duty to act according to the applicable standards of care arises from the mere
fact that she possesses a nursing license. 


In Lunsford, a nurse appealed
an order of the Board of Nurse Examiners finding she had violated a board rule
which requires a registered nurse to evaluate the status of a patient and to
institute appropriate nursing care to stabilize a patient’s condition and
prevent complications.  Lunsford, 648 S.W.2d at 394.  Lunsford was employed by the Willacy County
Hospital in Raymondville.  Donald Wayne
Floyd was traveling to Houston with Frances Farrell when he began experiencing
chest pain so Farrell took Floyd to the Willacy County Hospital for medical
assistance.  Farrell left Floyd in the
waiting area and tried to find a doctor to attend to Floyd who was experiencing
significant pain and pressure in his chest as well as pain and numbness in his
left arm.  Farrell found a physician and
explained that Floyd was suffering from chest pains, but he instructed her to
seek help from the nurse on duty because he was busy.  When Farrell persisted, he told her that the
hospital’s only cardiac care equipment was in use on another patient.  The physician then instructed Lunsford to
send Floyd to Valley Baptist Hospital in Harlingen.  Lunsford approached Floyd who was continuing
to complain of chest pain.  Lunsford
questioned Floyd about what he had eaten and whether he had engaged in heavy
exercise that day.  Lunsford did not take
Floyd’s vital signs even though she suspected “cardiac involvement” and she
instructed Farrell to drive Floyd twenty-four miles to Valley Baptist Hospital
in Harlingen.  Lunsford told Farrell to
use the emergency flashers and to “speed.” 
She also asked Farrell if she knew C.P.R. since there was a chance that
she might have to use it while in route to Harlingen.  Floyd died less than five miles from the
Willacy County Hospital.

The Board of Nurse Examiners suspended Lunsford’s nursing license for one
year based on its finding that her conduct had been “unprofessional and dishonorable
conduct likely to injure the public.”  Lunsford, 648 S.W.2d at 393.  The Board determined that Appellant had
violated a board rule which requires a registered nurse to evaluate the status
of a patient and to institute appropriate nursing care to stabilize a patient’s
condition and prevent complications by failing to assess Floyd’s condition,
inform the attending physician of the “life-death” nature of Floyd’s
instability, and take appropriate measures to stabilize Floyd’s condition and
prevent his demise.  Id. at 394.

Lunsford argued on appeal that she had no legal duty to care for Floyd because
he was not the patient of the hospital or the on-duty physician.  Lunsford,
648 S.W.2d at 394.  In making this argument, Lunsford relied on a
hospital policy which required that Floyd be sent to Valley Baptist unless he
had a physician on the staff of Willacy County Hospital or unless it was a
“life-death” situation.  Lunsford also claimed
on appeal that taking Floyd’s vital signs and informing the on-duty physician
of her findings would have been futile since he had already ordered her to send
Floyd to Valley Baptist.  In rejecting
these arguments, the Austin Court of Appeals held that Lunsford’s duty is not
derivative of the relationship between Floyd and the hospital or the on-duty
physician.  Lunsford, 648 S.W.2d at 394. 
Her duty instead arises from the privilege granted Lunsford by the state
in licensing her as a nurse.  Id.  Consequently,
her duty could not be relieved by a hospital policy or a physician’s order.  Id.  The Court of Appeals concluded that a nurse in
Lunsford’s situation has a duty to evaluate the medical status of the ailing
person seeking his or her professional care, and to institute appropriate
nursing care to stabilize a patient’s condition and prevent further
complications of physical and mental harm. 
Id. at 395.

Lunsford is distinguishable
because we are concerned here with whether a nurse had a duty to act according
to the applicable standard of care in a medical malpractice action.  The Austin Court of Appeals was careful to
note that the suit against Lunsford was not brought in contract or in tort by an
individual who feels he or she has been wronged by Lunsford’s action or
inaction.  Lunsford, 648 S.W.2d at 395.  It instead was brought by the State for Lunsford’s
violation of her contractual duties to always act in a professional and
honorable manner.  Id.  Even if Lunsford could be construed as holding
that a nurse’s duty to act according to the applicable standard of care arises
from the mere fact that she has a nursing license, such a holding would be
contrary to St. John v. Pope because
it would impose a duty on nurses to practice their profession or render
services to everyone who asks.  We
therefore decline to apply Lunsford
to this case.

The first question to be decided is whether the summary judgment evidence
conclusively shows that Mijares did not consent or agree, either expressly or
impliedly, to accept Estrada as a patient. 
Mijares stated the following in paragraphs four through six of her
affidavit:

4. I never
evaluated or treated Richard Estrada.  I
never examined Mr. Estrada or gave orders for his treatment, either personally
or through an intermediary.  I never
exercised any medical judgment with regard to Mr. Estrada’s care.  I was never instructed or assigned to
evaluate or treat Mr. Estrada.

 

5. On July 22,
2007, when asked to do so by a floor nurse at Del Sol Medical Center I, as a
courtesy, communicated to Dr. Hajj that a pulmonary consult had been requested
for Mr. Estrada.  Also on July 22, 2007,
Dr. Hajj gave orders via a telephone call for Mr. Estrada.  I transcribed these orders onto Mr. Estrada’s
chart per Dr. Hajj’s request.

 

6. I did not
participate in the decisions to treat or not treat, or to discharge Mr.
Estrada, nor did I have any other involvement in Mr. Estrada’s care or
treatment. 

 

Dr. Hajj also
testified that he never asked Mijares to evaluate Estrada.  This evidence is sufficient to conclusively
prove that Mijares did not have a nurse-patient relationship with Estrada, and
therefore, she did not owe a duty to act according to the applicable standards
of care.  The burden shifted to Appellant
to present evidence raising a genuine issue of material fact.

Appellant asserts that a fact issue exists because Mijares telephoned Dr.
Hajj to inform him of the consultation with Estrada but Mijares insisted that
she made the call as a courtesy to the doctor. 
Mijares did not by merely advising Dr. Hajj that he has been requested
to provide a pulmonary consultation, consent or agree to accept Estrada as her
patient.  

Appellant next claims that a fact issue exists because Mijares provided
Dr. Hajj with information from Estrada’s chart regarding his condition.  Mijares did not evaluate Estrada or take it
upon herself to review his chart.  The
evidence instead shows that Dr. Hajj requested that Dr. Mijares provide him
with information from Estrada’s chart. 
There is no evidence that Mijares’ reviewed the chart with the purpose
of diagnosing Estrada or providing him with treatment.  See St.
John, 901 S.W.2d at 424 (even though doctor listened to another doctor’s
description of a patient’s symptoms and came to a conclusion about the basis of
the patient’s condition, he did so for the purpose of evaluating whether he
should take the case, not as a diagnosis for a course of treatment). 

Appellant also claims that a fact issue exists with respect to the
nurse-patient relationship because Mijares wrote orders on Estrada’s
chart.  The evidence showed that Mijares transcribed
Dr. Hajj’s verbal orders onto the chart and he countersigned the orders in
accordance with hospital policy.  She
explained that she was not authorized to write orders in the hospital setting
and she was simply transcribing the orders dictated to her by Dr. Hajj.  Dr. Gibson, however, made the following
statement in his discharge summary:  “Apparently,
[Estrada] was seen by Dr. Hajj’s, I suspect, PA, who simply added Rocephin
and as there is nothing to find clinically, I think we will send this man
home.”  There is no evidence that Dr.
Gibson was necessarily referring to Mijares when he made this statement.  While we are required to take the evidence in
the light most favorable to the non-movant, the summary judgment standard does
not require the Court to assume facts not shown in the record.

Finally, Appellant claims, without citing any of the summary judgment evidence,
that Dr. Hajj relied on Mijares’ skill, education, and training as a nurse
and nurse practitioner.  We have reviewed
all of the summary judgment evidence, including the excerpts of Dr. Hajj’s
deposition testimony and we have found no evidence supporting this
statement.  Having found no fact issues
precluding summary judgment, we overrule the sole issue presented on appeal and
affirm the judgment of the trial court.

 

February 20, 2013                               _______________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

Antcliff, J., not participating











[1]  Appellant’s claims against Dr. Tan are based
on a theory of vicarious liability.  Dr.
Tan filed a motion for summary judgment in which she denied being Mijares’
employer or supervising physician.  The
trial court did not rule on Dr. Tan’s motion for summary judgment and the court
instead concluded that the summary judgment in favor of Mijares rendered moot
all of Estrada’s claims against Dr. Tan.  Evidence that may be considered in determining
a summary judgment motion includes deposition transcripts, interrogatory
answers, and other discovery responses referenced or set forth in the motion or
response as well as affidavits on file at the time of the hearing.  Tex.R.Civ.P. 166a(c).  The summary judgment order does not indicate
that the trial court, in addressing Mijares’ motion for summary judgment,
considered any of the evidence attached to Dr. Tan’s motion for summary
judgment or to Appellant’s response to that motion.  Consequently, we will not consider that evidence
in reviewing the trial court’s ruling.