**CENTRAL MAINE POWER COMPANY**

**v.**

**Ernest H. JOHNSON, State Tax Assessor.**

Supreme Judicial Court of Maine.

March 30, 1970.

William M. Finn, Augusta, for plaintiff.

Jerome S. Matus, Asst. Atty. Gen., Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DuFRESNE, WEATHERBEE, and POMEROY, JJ.

MARDEN, Justice.

On report from an appeal by plaintiff from an administrative decision of defendant wherein certain sales taxes were assessed against it.

The controversy arises from the following facts:

During the years 1963 and 1964 Central Maine Power Company (Company) was a party to certain "line extension" contracts with persons residing off Company's existing transmission lines, whereby Company agreed to extend lines for the delivery of electrical service to the customer, for a consideration which included the normal line construction costs for such extension and for the electrical energy supplied according to scheduled rates. The normal line construction cost (extension charge) could be paid by customer when the "extension" was completed or by annual or monthly installments. In most instances the cost was amortized by monthly charges. The last method of payment is here involved.

It is agreed that the appellant is a retailer, registered under the applicable provisions of the sales and use tax law, 36 M.R.S.A., (Act) and that the sale of electrical energy is a retail sale within the meaning of the Act, § 1752, subsection 11.

The practice under the line extension agreements, significant to the issue, is represented by three procedures:

"A. If, in a given month, the customer consumed no electricity, the billing would reflect the line extension charge only. No sales tax was assessed in such

a situation. There is no dispute as to this situation.

"B. If, in a given month, the customer consumed electricity in excess of the line extension charge the billing would reflect the sale of electricity plus the sales tax on the total amount of the bill. Since the electricity sold exceeded the extension charge the bill did not reflect the extension charge. There is no dispute as to this situation.

"C. If, in a given month, the customer consumed electricity in an amount less than the extension charge the billing would reflect the sales tax on the electricity sold but not on the extension charge. For example, if the extension charge was $8.00 but the customer purchased only $3.00 worth of electricity the customer would be billed $8.12. This would be shown either as the total amount due, $8.12, or broken down such as KWH—$3.12, extension charge $5.00. The State Tax Assessor assessed an additional tax on the line extension charge. This additional assessment is disputed by Central Maine and is the subject of this appeal."

Of these three factual situations, the controversy is centered under situation "C." The Assessor contends that when electricity is sold thereunder, the sale price of the electricity includes the line extension charges as representing charges for a service which is part of the sale, or as a minimum charge for the sale of electricity.

Central Maine Power contends that the line extension charge is not a service which is part of the sale and is not part of the sale price, but is in the nature of an installation charge, "separately charged and stated." The question is whether the monthly line extension charge in situation "C" is taxable.

The answer lies in the determination of whether the charges were taxable sale prices within our sales and use tax law (36 M.R.S.A.).

Section 1752, subsection 14 of the Act defines sale price as:

" 'Sale price' means the total amount * * *, of a retail sale, including any services that are a part of such sale, valued in money, * * *. 'Sale price' shall not include * * * the price received for labor or services used in installing or applying * * * the property sold, if separately charged or stated. * * *; and shall not include the cost of transportation from the retailer's place of business * * * provided such charges are separately stated and provided such transportation occurs by means of common carrier, contract carrier or the United States mails."

Absence of case law upon the issue leaves us to legislative intent, Emple Knitting Mills v. City of Bangor et al., 155 Me. 270, 274, 153 A.2d 118, and statutory interpretation, tempered by the "principle that when a statute imposing * * * a tax * * * on the citizen * * * is fairly susceptible of more than one interpretation," the citizen is to be favored. McCarthy v. Greenlawn Cemetery Assn., 158 Me. 388, 392, 185 A.2d 127.

Among the three factual situations, neither Company nor Assessor have assumed consistent postures, which in itself, would justify a conclusion that the statute "is fairly susceptible of more than one interpretation."

If Assessor concedes that there is no "taxable event" under situation "A," how can he contend the presence of a "taxable event" in situation "C" when part of the bill on its face includes a charge which has been conceded tax free in "A"?

If Company contends that the extension charge is an installation charge separately charged and stated, how can it justify the manner of billing under situation "C," when there is no "break down" between kilowatt hours sold and the extension charge?

In order for a transportation charge to be excluded from a sale price it must be provided by mail, common or contract carrier (Section 1752, subsection 14), thus the extension charge here must be classified either as a service charge which is a part of the sale (taxable) or an installation charge, separately charged and stated (non-taxable).

It is not uncommon to speak of installing electricity in a home or place of business, in which parlance it means to equip the premises with the means of receiving electrical energy. Webster's Third New International Dictionary defines "install" as "to set up for use or service (the electrician installed the new fixtures)."

The scheduled rates allowed Company by the Public Utilities Commission for the production and delivery of its electrical energy includes consideration of its "public service," 35 M.R.S.A. §§ 51, 52; and its operating expenses which include distribution of its product and service, 43 Am.Jur., Public Utilities and Services § 141; Hamilton v. Caribou Water, Light & Power Company, 121 Me. 422, 425, 117 A. 582. The cost of such service, distinguishable from a line extension charge, is an integral part of its rates,—sale prices.

The line extension charge separately stated is not an element of sale price within the Act.

Situation "C" poses an equivocal problem, which must be solved in the alternative. In a billing in which the volume of electricity delivered and the extension charge are separately stated, the extension charge is not taxable. In a billing in which the volume of electricity sold and the extension charge are not separately stated, Assessor is entitled to view the total as a sale of electrical energy and taxable.

So ordered.