TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON UNOPPOSED MOTION TO MODIFY THE JUDGMENT








NO. 03-03-00698-CV






Harold Granek, M.D., Appellant


v.


Texas State Board of Medical Examiners and Donald W. Patrick, M.D., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT

NO. GN201905, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING





O P I N I O N 




 On August 3, 2005, we overruled appellant Harold Granek, M.D.'s motion for
rehearing. To address additional issues raised in his unopposed motion to modify the judgment, we
withdraw our opinion and judgment dated August 3, 2005, and substitute the following in its place. 

 Granek appeals the district court's judgment affirming an order of the Texas State
Board of Medical Examiners (Board) imposing disciplinary sanctions against him. (1) He complains
chiefly that the Board violated due process in prosecuting its disciplinary complaint against him
when some of its allegations were more than a decade old; that there is not substantial evidence to
support the Board's disciplinary grounds; and that the Board committed errors of law by including
certain commentary in its order. We will affirm in part and reverse and remand in part.


BACKGROUND


 Granek holds a license to practice medicine issued by the Board. He is an
ophthalmologist who specializes in the treatment of the vitreo-retinal part of the eye and has
practiced in Fort Worth since approximately 1991.


Disciplinary proceedings 

 In June 2000, the Board docketed a formal disciplinary complaint against Granek,
which it subsequently amended in December 2000 and again in January 2001. The complaint was
referred to the State Office of Administrative Hearings, and a hearing was held before an
Administrative Law Judge (ALJ) in January 2001. The ALJ heard evidence and issued a proposal
for decision (PFD) concluding that the Board had established three grounds for discipline.

 First, the ALJ found that, on January 8, 1994, Granek had failed to attend a patient,
L.H., after she had presented herself at the emergency room of the HCA Medical Plaza hospital in
Fort Worth (HCA) with severe pain caused by building pressure within her eye. The ALJ found that
Granek, who was not at the hospital at the time nor "on call," had refused to return to the hospital
to perform paracentesis or "tapping" of L.H.'s eye with a needle to relieve pressure. Instead, Granek
had maintained that tapping was at best a short-term measure aimed merely at symptoms and had
previously advised L.H. to see a glaucoma specialist to treat her underlying problem. The ALJ
concluded that by this conduct, Granek had "failed to practice medicine in an acceptable professional
manner consistent with public health and welfare," Tex. Occ. Code Ann. § 164.051(a)(6), and
"commit[ted] unprofessional or dishonorable conduct that is likely to . . . injure the public." Id.
§§ 164.051(a)(1), 164.052(a)(5) (West 2004). Both violations are grounds for physician discipline. 
Id.

 As additional support for these ultimate conclusions of law, the ALJ relied on two
sets of legal conclusions regarding Granek's duties to L.H. in these circumstances. First, the ALJ
concluded that Granek breached the tort duty not to abandon L.H. See King v. Fisher, 918 S.W.2d
108, 112 (Tex. App.--Fort Worth 1996, writ denied); Lee v. Dewbre, 362 S.W.2d 900, 902 (Tex.
Civ. App.--Amarillo 1962, no writ). (2) Second, the ALJ derived a set of physician-patient duties from
Lunsford v. Board of Nurse Examiners, 648 S.W.2d 391 (Tex. Civ. App.--Austin 1983, no writ). (3) 
Citing Lunsford, the ALJ concluded that "[a] license to provide medical services is a covenant to
serve the people of the State of Texas with professional skill and power and a contract to always act
in a professional and honorable manner," and that Granek broke his "covenant to serve the people
of the State of Texas with all his professional skills and powers" and his "contract with the people
of the State of Texas to act in a professional and honorable manner." See id. at 395.

 The second ground for discipline found by the ALJ was based on occupations code
section 164.051(a)(7). See Tex. Occ. Code Ann. § 164.051(a)(7) (West 2004). That provision
applies when a licensee "is disciplined by a licensed hospital or medical staff of a hospital, including
removal, suspension, limitation of hospital privileges, or other disciplinary action, if the board finds
that the action: (A) was based on unprofessional conduct or professional incompetence that was
likely to harm the public; and (B) was appropriate and reasonably supported by evidence submitted
to the board." Id. The ALJ based this conclusion on findings that Granek failed to comply with the
requests of both the emergency room doctor and the HCA chief of staff to attend L.H. on January
8, 1994; that the chief of staff had summarily suspended Granek's hospital privileges for his refusal;
that an ad hoc peer review committee at HCA had rescinded the summary suspension but
recommended placing Granek on a twelve-month probated suspension with monitoring; and that this
recommendation had been affirmed in a final decision of the HCA Board of Trustees.

 The third ground for discipline found by the ALJ related to allegations that Granek
had improperly touched the breasts of female patients during the 1980s. The ALJ found that Granek
had touched the breasts of two patients, J.G. and K.G., although she found that Granek had acted
intentionally only with regard to J.G. (4) Based on her fact-findings that Granek had intentionally
touched J.G.'s breasts and touched K.G.'s breasts, the ALJ concluded that Granek had "failed to
practice medicine in an acceptable professional manner consistent with public health and welfare,"
Tex. Occ. Code Ann. § 164.051(a)(6), and "commit[ted] unprofessional or dishonorable conduct that
is likely to . . . injure the public." Id. §§ 164.051(a)(1), .052(a)(5). The ALJ also based these
ultimate conclusions on her conclusions of law, derived from Lunsford, that Granek's medical
license was a "covenant to serve the people of the State of Texas with all his professional skills and
powers" and a "contract with the people of the State of Texas to act in a professional and honorable
manner." See Lunsford, 648 S.W.2d at 395.

 Having concluded that the Board had established three bases for imposing physician
discipline, see Tex. Occ. Code Ann. § 164.001(b), the ALJ proceeded to make findings of fact and
conclusions of law regarding a recommended penalty:


20. . . . Respondent is qualified for a probated sanction.

21. Based on the foregoing, the Board may suspend Respondent's license[] to
practice medicine for three years but probate that suspension for a three-year
period conditioned on his successfully completing educational courses designed
to enhance his knowledge of professional ethics and to improve his ability to
communicate with patients.


22. Based on Findings of Fact Nos. 70-71, there is insufficient evidence to
determine an appropriate administrative penalty against Respondent.



In her PFD, the ALJ expressed concern regarding the staleness of the Board's improper contact
allegations, which were based on events that had occurred as many as fifteen years before the
hearing. She also included a finding that "Staff's allegations in this case were stale, the latest
complaint dating from approximately 1994," and further elaborated in her PFD that she viewed
staleness as a mitigating factor.


The staleness of [the Board] Staff's complaints must be considered a mitigating
factor. It is simply unfair to all persons involved in the disciplinary process for
complaints to languish for years as they did in this case. Over time memories fade
or become distorted, records and witnesses are lost, rules and statutes alter, all
adversely affecting the disciplinary process. If a complaint is important enough to
prosecute, it should be done in a timely fashion.


Some of the incidents that became complaints in this matter occurred in the late
1980s. The most recent complaint was from 1994. Staff did not file its complaint
against Respondent until 2000. Staff's dilatoriness in prosecuting the complaints
ultimately makes the Board's decision that much harder. When the public welfare
and a person's professional livelihood and reputation are at stake, justice delayed is
justice diminished. The staleness of the complaints in this matter was an injustice
both to complainants and Respondent.



The Board's original order of April 24, 2002

 In an order dated April 24, 2002, the Board adopted each of the ALJ's proposed
findings of fact except for three that are not material to this appeal. It also adopted all of the ALJ's
conclusions of law material to this appeal except that it rejected conclusions of law 20 (that Granek
"is qualified for a probated sanction") and 21 (that the Board could suspend Granek's license for
three years conditioned on his completion of required education). In lieu of conclusions 20 and 21,
the Board ordered that Granek's medical license be immediately revoked. It provided the following
four-paragraph explanation (italics in original):


The Board omitted the ALJ's proposed conclusions of law Nos. 20 and 21 in this
Final Order, and renumbered the ALJ's proposed conclusion 22 as 19 in this Final
Order. 


The ALJ's proposed conclusion of law No. 20 stated: "Based on Findings of Fact
Nos. 57-58, Respondent is qualified for a probated sanction." 


The ALJ's proposed conclusion of law No. 21 stated: "Based on the foregoing, the
Board may suspend Respondent's license[] to practice medicine for three (3) years
but probate that suspension for a three-year period conditioned on his successfully
completing educational courses designed to enhance his knowledge of professional
ethics and to improve his ability to communicate with patients."


The ALJ's proposed conclusions of law Nos. 20 and 21 are not really conclusions of
law at all, but recommended sanctions. While it may be appropriate for the ALJ to
recommend a sanction, it is ultimately up to the Board to determine what the
appropriate sanction should be. The ALJ believes the relative minor sanction of a
three year suspension of Respondent's license is sufficient, the Board disagreed, and
concluded that the revocation of Respondent's license is the only sanction that will
adequately protect the public. Respondent's conduct of fondling and molesting
patients while performing ophthalmologic examinations on them is not a problem
that will be corrected by additional continuing medical education as suggested by
the ALJ. Respondent has engaged in this conduct over a period of many years. 
There was no evidence that Respondent has sought any treatment for his inability to
control his prurient desires, nor in fact was any evidence admitted that the
Respondent's defects in character can be treated. The Board feels that the sanction
of revocation of Respondent's license is the only sanction that will adequately protect
the public. The Board will not condone the Respondent's assaulting, fondling or
molesting one other patient by under [sic] the guise of practicing medicine by
allowing him to retain his medical license. 


Granek's appeal and subsequent Board orders

 On May 13, 2002, Granek filed a motion for rehearing of the Board's April 24 order. 
On June 10, a few days after his motion for rehearing expired by operation of law, Granek filed a
petition for judicial review of the Board's order in the Travis County district court. He also sought
injunctive relief to prevent the Board from enforcing its order during the pendency of his
administrative appeal. On June 11, the district court granted a temporary restraining order enjoining
the Board from enforcing its order "[p]rovided, however, that Plaintiff must not treat female patients
without an assistant present." At the TRO hearing, the court evidently expressed concern that the
Board's allegations against Granek were stale and that revocation was a disproportionate penalty. 

 The temporary injunction hearing regarding the April 24 order was subsequently held
on June 27, 2002. At the hearing, counsel for the Board recounted the events at the TRO hearing
and represented that Board staff "took [the district court's] words to heart" and had requested that
the Board reconsider the revocation sanction it had assessed against Granek. However, Board
counsel explained that, in his view, the Board was without jurisdiction to modify its order while
Granek's suit for judicial review was pending. Board counsel thus requested that the court formally
"remand this case back . . . for the limited purpose of them reassessing the penalty, not to remand
the whole thing back." While not appearing to oppose this measure, Granek's counsel insisted that
injunctive relief was necessary in the interim to prevent the Board from enforcing its still-live order. 
 The trial court issued a written order dated August 12, 2002, enjoining the Board from
enforcing its April 24 order, staying that order, and setting trial on the merits. (5) The court further
remanded the April 24 order for "further proceedings . . . limited to a reconsideration and possible
further action relating to the penalty imposed against . . . Granek" and ordered that, "If
reconsideration and further action is taken," the Board was to "file any such changes or decisions
with the Court." 

 On remand, the Board reconsidered its April 24 order during a meeting on August 16,
2002. On the same day, it issued a new "Final Order" that was substantively identical to the Board's
April 24 order except that it changed the sanction from immediate license revocation to a three-year
probated license suspension, subject to sixteen terms and conditions. The Board's first condition
was "Respondent shall not examine or treat patients." Another condition required Granek to provide
a copy of the order to all health care facilities where he had or sought privileges. The Board
additionally assessed an administrative penalty of $25,000, notwithstanding its undisturbed
conclusion of law 19 that "there is insufficient evidence to determine an appropriate administrative
penalty against Respondent." Finally, although the Board replaced its original revocation sanction
with a three-year probated suspension, it retained in full its explanation for the revocation sanction
from the April 24 order.

 On September 23, 2002, the Board issued an "Amended Final Order" purporting to
correct a "typographical error" in the conditions stated in the August 16 order and ordering that 
Granek could not treat female patients during his probation period; he was permitted to treat male
patients. Granek was served with a copy of the Amended Final Order under a cover letter advising
him of his right to seek rehearing within twenty days of receipt. He did not file a motion for
rehearing specifically addressed to this order. 

 On October 25, 2002, shortly before the temporary injunction was to expire, (6) Granek
obtained, in his pending suit for judicial review, a new temporary injunction enjoining the Board
from enforcing its April 24 order pending trial on the merits. (7)

 On July 18, 2003, the district court heard Granek's administrative appeal on the
merits. On September 4, the court rendered judgment reversing and remanding "the action of the
Texas State Board of Medical Examiners," with apparent reference to the Board's September 23,
2002 Amended Final Order. The district court held that the $25,000 administrative penalty could
not be supported by the findings and conclusions adopted by the Board. Specifically, the penalty
contradicted conclusion of law 19, that "there is insufficient evidence to determine an appropriate
administrative penalty against Respondent." The court affirmed the Board's order in all other
respects. On remand, the Board accepted the district court's judgment and opted to "take no further
action regarding the imposition of any administrative penalty" against Granek.

 Granek now appeals the Board's order concluding that grounds exist for discipline
and imposing sanctions against him.


DISCUSSION


 Granek brings five issues, complaining that: (1) the Board violated due process by
waiting until its allegations were stale and he had suffered actual prejudice before prosecuting its
disciplinary action against him; (2) the Board's findings of grounds for discipline are not supported
by substantial evidence; (3) the Board committed an error of law in modifying the ALJ's PFD to add
its four-paragraph explanation regarding sanctions because it contains unproven assertions regarding
Granek's conduct; (4) the Board committed an error of law and exceeded its statutory authority by
predicating its disciplinary findings upon legal duties derived from Lunsford v. Board of Nurse
Examiners; and (5) the Board committed an error of law by applying a preponderance of the
evidence standard, rather than clear and convincing standard, to the administrative hearing seeking
to revoke or suspend his license. See Tex. Gov't Code Ann. § 2001.174(2) (West 2000).

 As a preliminary matter, the parties dispute whether we must address and affirm each
disciplinary ground found by the Board in order to affirm its order. As previously noted, the Board
made ultimate conclusions of law that Granek's conduct constituted three grounds for discipline: (1)
Granek's failure to attend L.H. violated sections 164.051(a)(1) and (6) and 164.052(a)(5) of the
occupations code; (2) Granek was disciplined by HCA so as to constitute a ground for discipline
under section 164.051(a)(7); and (3) Granek's improper contact with K.G. and J.G. violated sections
164.051(a)(1) & (6) and 164.052(a)(5). Any one of these grounds could have independently
supported the Board's disciplinary action. See Tex. Occ. Code Ann. § 164.001(b). The Board points
out that where its disciplinary sanction is based upon multiple, independently sufficient grounds, we
affirm the order if any one of the grounds can support the sanction awarded. Texas State Bd. of Med.
Exam'rs v. Scheffey, 949 S.W.2d 431, 436 (Tex. App.--Austin 1997, writ denied); Guerrero-Ramirez v. Texas State Bd. of Med. Exam'rs, 867 S.W.2d 911, 918 (Tex. App.--Austin 1993, no
writ). Relying on this principle, the Board contends that we should affirm its order if even a single
disciplinary ground is legally supported. 

 In our original opinion, we overruled Granek's issues with regard to the two
disciplinary grounds relating to L.H. and presumed, in light of Scheffey and Guerrero-Ramirez, that
we did not need to address his issues as to the third ground relating to improper contact with patients. 
On rehearing, Granek asserted that, according to its order, the Board did not base the sanctions it
assessed on each found violation independently or alternatively, but relied on the cumulative weight
of all three violations. (8) He contended that by holding that the two grounds relating to abandonment
of L.H. supported the Board's disciplinary sanctions, we improperly speculated regarding the
Board's reasoning and substituted our judgment for that of the Board. Granek also observed that,
in assessing sanctions, the Board appeared to rely primarily on its disciplinary ground that Granek
had improper contact with patients, yet we did not review the Board's findings and conclusions
supporting that important ground.

 Without deciding whether we are necessarily required to do so, we will proceed to
examine each of the three disciplinary grounds found by the Board.


Due process

 In his first issue, Granek urges that the Board violated his due process rights by
waiting over thirteen years to prosecute its allegations regarding improper contact with K.G. and J.G.
and over six years to prosecute its allegations regarding L.H. and the HCA disciplinary action. 
Citing several cases from other jurisdictions involving delays by medical or other professional
disciplinary boards, Granek argues that due process barred the Board from prosecuting its
disciplinary action because the delay has caused him actual prejudice. See Appeal of Plantier, 494
A.2d 270 (N.H. 1985). As proof of actual prejudice, he cites examples from the record purporting
to illustrate that "[e]very fact witness at the administrative hearing testified to problems remembering
the events at issue" and that "[t]he delay also caused the loss of physical evidence." The Board
characterizes Granek's examples of alleged prejudice as out-of-context references regarding
immaterial details that stem from "Dr. Granek's counsel's confusing cross examination." The Board
further contends that even if its delay did cause Granek prejudice, its order should not be reversed
because the appropriate legal standard governing Granek's due-process complaint is that employed
by the Texas Court of Criminal Appeals with regard to pre-indictment delay. See Ibarra v. State,
11 S.W.3d 189, 193 (Tex. Crim. App. 1999). This test requires a showing of both actual prejudice
and that the State intentionally delayed in order to gain a tactical advantage over the defendant. Id.
at 193. 


 Due process analysis of agency prosecutorial delay

 Claims regarding deprivation of constitutional rights present questions of law and we
accordingly review them de novo. State v. Hodges, 92 S.W.3d 489, 494 (Tex. 2002). The due
process protections of our federal and Texas constitution apply to agency proceedings. See Langford
v. Employees Ret. Sys., 73 S.W.3d 560, 568 (Tex. App.--Austin 2002, pet. denied); see also Texas
Health Facilities Comm'n v. Charter Med.-Dallas, Inc., 665 S.W.2d 446, 454 (Tex. 1984) ("when
a denial of due process has resulted in the prejudice of substantial rights of a litigant," agency's
action is arbitrary and capricious even if supported by substantial evidence); Tex. Gov't Code Ann.
§ 2001.174(2)(A) (West 2000). Although statutes of limitations provide the primary assurance
against prosecution of unduly stale claims or charges, due process can provide independent and
additional protections. See Ibarra, 11 S.W.3d at 193 (due process provides some protection against
undue pre-indictment delay in murder prosecution, which has no statute of limitations in Texas);
State v. McCoy, 94 S.W.3d 296, 301-02 (Tex. App.--Corpus Christi 2002, no pet.) (addressing due
process claim based on alleged pre-indictment delay in prosecuting crime within applicable
limitations period). The fact that the legislature has not prescribed a limitations period for the
Board's disciplinary proceedings does not foreclose Granek's due-process complaint. See generally
Tex. Occ. Code Ann. §§ 164.051-.204 (West 2004). At the same time, the fact that the Board may
have delayed beyond the limitations periods for crimes and torts comparable to Granek's alleged
acts (9) does not in itself compel us to find a due-process violation. 

 To address Granek's due process complaint, we must first ascertain the appropriate
standard to apply. Neither party cites any Texas case addressing the due-process implications of pre-prosecution delays in agency disciplinary actions. The Board urges that we apply the test applicable
to due-process complaints regarding pre-indictment delay in criminal cases, which requires a
showing of both actual prejudice and that the government intentionally delayed in order to obtain
a tactical advantage over the accused. See United States v. Lovasco, 431 U.S. 783, 789 (1977);
Ibarra, 11 S.W.3d at 193. Granek responds that this test, derived in the criminal context, is
inappropriate for civil administrative proceedings and that we should look solely to whether the
delay caused him actual prejudice. Cf. City of Corpus Christi v. Public Util. Comm'n, 51 S.W.3d
231, 262-63 (Tex. 2001) (in addressing due process claim regarding hearing procedure, questioning 
whether procedure caused actual injury). We agree with Granek that he is not required to show that
the Board intentionally delayed its prosecution against him to obtain a tactical advantage but need
show only actual prejudice.

 The requirement that criminal defendants complaining of due process violations from
pre-prosecution delay prove intentional delay for tactical advantage derives from judicial recognition
of the unique responsibilities and role of prosecutors. In Lovasco, the United States Supreme Court
reasoned that due process would tend to be served, rather than undermined, by permitting a
prosecutor to fully investigate a criminal case "until he is completely satisfied that he should
prosecute and will be able promptly to establish guilt beyond a reasonable doubt" before seeking
indictment. Lovasco, 431 U.S. at 795. The court emphasized the professional duties of prosecutors,
the demands of proving criminal charges beyond a reasonable doubt, and the deference traditionally
afforded prosecutorial discretion in determining whether and how to proceed with criminal
prosecutions. Id. at 790-95.

 These characteristics of criminal prosecutions and prosecutors are lacking in Board
disciplinary proceedings. Such proceedings are civil in nature, and, as we discuss below, the Board
is not required to prove its case beyond a reasonable doubt. See Tex. Occ. Code Ann. §§ 165.001-.103 (West. 2004). Moreover, at least in this case, there is no suggestion that the Board's long delay
was the legitimate product of investigative efforts warranted by the Board's need to gather evidence
and prepare sufficiently to prevail. The Board's claims rested upon straightforward "swearing
matches" between Granek and other witnesses and tended to be weakened, rather than strengthened,
by the passage of years, as the proceedings before the ALJ ultimately demonstrated. (10) While we are
not second-guessing the Board's administrative decisions regarding resource allocation or the haste
with which it has processed disciplinary complaints in the past, we note these circumstances because
they distinguish the Board's delay in this case from the prosecutorial investigative delay that
underlies the due process standard articulated in Lovasco and Ibarra. (11)

 Accordingly, in order to prevail on his due process defense, Granek need only prove
that the Board's delay caused him actual prejudice. This requires us to consider the degree of
harmful effect from delay that will rise to constitutionally significant prejudice. The ALJ expressed
grave concern that the Board's allegations were stale. However, this does not mean that Granek's
due process rights were violated. Not all deterioration in the quality of proof due to delay constitutes
actual prejudice. The fact that witness memories fade over time is an inherent feature of eyewitness
testimony and memory, like other matters bearing on the accuracy of a witness's perceptions, is
traditionally tested through cross-examination and weighed by the fact-finder. In delineating the
point at which actual prejudice arises, we must avoid improperly encroaching into this traditional
purview of the fact-finder.

 We obtain guidance regarding the nature of actual prejudice from Texas criminal
cases and administrative disciplinary decisions from other states. The Texas Court of Criminal
Appeals has implied that "proof that exculpatory evidence or witness became unavailable to [the
defendant] during the delay" might establish constitutionally significant prejudice. Ibarra, 11
S.W.3d at 193. In analogous cases from other states involving pre-prosecution delays in agency
disciplinary proceedings, those courts have applied similar due-process standards, considering the
extent to which agency delay has caused witnesses to become unavailable or the defendant or other
witnesses to forget the relevant events. Compare Sibley v. North Carolina Bd. of Therapy Exam'rs,
566 S.E.2d 486, 488 (N.C. App. 2002) (despite over five-year delay, "the record before us does not
reveal that any of the witnesses had problems recollecting the events which transpired, nor has
petitioner shown that any witness is now unavailable, nor has petitioner shown difficulty in
remembering the events."); Giffone v. DeBuono, 263 A.2d 713, 714-15 (N.Y. App. Div. 1999) (in
1997 agency disciplinary proceeding relating to events in 1970s and 1980s, held that defendant failed
to show actual prejudice where he could not demonstrate particular lost documents, witnesses, or
items of evidence which, if available, would cast doubt upon opposing evidence), and Reddy v. State
Bd. of Prof'l Med. Conduct, 259 A.2d 847, 848-49 (N.Y. App. Div. 1999) (no due process violation
where "proof of the alleged misconduct was primarily based upon the testimony of the complaining
witnesses and petitioner, who recalled details of the events with clarity"), with Appeal of Plantier,
494 A.2d 270, 272-75 (N.H. 1985) (due process violated by prosecution of decade-old allegation
where sole evidence was the patient's eyewitness testimony, and doctor and staff had no independent
recollection of patient's fifteen-minute appointments). These courts have also looked to whether the
relevant events were contemporaneously recorded and whether the defendant had early notice of the
allegations against him. See Sibley, 566 S.E.2d at 488 (noting that in lawsuit filed two years after
alleged incident, accuser had answered interrogatories under oath; "consequently, [the defendant]
was aware of the specifics of the allegations in the Board's notice of hearing" two years thereafter);
Giffone, 263 A.2d at 714-15 (defendant had retained office notes from appointments where disputed
events allegedly occurred); Appeal of Plantier, 494 A.2d at 274 (while stale allegations based solely
on credibility of eyewitness accounts "significantly increase the problems of proof and . . . increase
the danger of false, fraudulent, frivolous, speculative or uncertain claims," "disciplinary actions
turning on evidence that is documentary in nature are less likely to be prejudiced by the passage of
time."). 

 Having identified the appropriate standard governing our analysis of Granek's due
process issue, we now apply it to each of the three disciplinary grounds the Board prosecuted against
him.


 Application

 Improper contact allegations

 We conclude that the Board violated due process by prosecuting its allegations that
Granek improperly touched K.G. after a thirteen-year delay. We find it significant that the ALJ
observed firsthand that the "staleness of K.G.'s complaint was more of a disadvantage to Respondent
than Staff." Moreover, the ALJ found that, at most, Granek had made inadvertent contact with
K.G.--a finding that the Board adopted--and credited Granek's assertions that he could not recall
the incidents K.G. alleged. There was no evidence of any contemporaneous or proximate event that
would have put Granek on notice of any complaint regarding contact with K.G. It was undisputed
that K.G. never mentioned her concerns to Granek, and there was no documentary evidence
memorializing the incidents she alleged. 

 Furthermore, Granek estimated that during his career he had handled 250,000 patient
visits involving 25,000 patients. We agree with the ALJ that Granek "could not be expected to
remember every arm position or contact he maintained during some six office visits [with K.G.], the
last of which occurred about fifteen years ago." For the same reasons, Granek was incapable of
defending against a thirteen-year old allegation that, during a handful of these thousands of patient
visits, he unknowingly made accidental contact with a patient's breasts, especially where the sole
evidence was the patient's word against his. See Appeal of Plantier, 494 A.2d at 272-75. We
conclude that the Board violated due process in prosecuting such an allegation.

 However, we conclude, as did the ALJ, that "[b]ecause Respondent had
contemporaneous notice [of] J.G.'s complaint, staleness was not as much of a concern as with some
other complainants." It is undisputed that J.G. confronted Granek following her final patient visit
in 1987, complained that he had touched her inappropriately during nearly every one of her patient
visits, and told him that it made her uncomfortable. J.G. either told Granek, or Granek discerned,
that the source of J.G.'s concerns was his touching of her breasts. Both J.G. and Granek recounted
that Granek denied that any contact was intentional. This is the same position that Granek asserted
before the ALJ, and continues to assert today. See Sibley, 566 S.E.2d at 488 (emphasizing
importance of early notice of allegations in alleviating due process concerns). 

 Furthermore, it is also undisputed that, following the confrontation, J.G. wrote Granek
a letter regarding the incident, and that Granek responded by calling J.G., reiterating that he did not
deliberately touch her, and assuring her that he did not want her to feel uncomfortable. J.G. and
Granek likewise agree that, within a few months, J.G. filed a written complaint with the Tarrant
County Medical Society. Although J.G.'s letters and complaint are not in the administrative record,
we can discern from testimony that the documents continued to exist and were not lost or destroyed
during the intervening years. See Giffone, 263 A.2d at 714-15 (importance of defendant's retention
of office notes from disputed appointments); Appeal of Plantier, 494 A.2d at 274 (acknowledging
that disciplinary actions based on documentary evidence "are less likely to be prejudiced by the
passage of time").

 Granek counters that, while he had notice in 1987 that J.G. believed he had touched
her inappropriately, she had been vague regarding the nature of his contact. Granek contrasts the
nature of her contemporaneous complaint with J.G.'s testimony before the ALJ in 2001. At the
hearing, J.G. testified that she had shielded herself with magazines to prevent Granek from touching
her breasts, yet Granek persisted in doing so. Granek claims that he had never heard this version of
J.G.'s allegations until she testified at the hearing. He urges that the Board violated due process by
forcing him to defend what he asserts were newly fabricated allegations when time had faded
memories of various collateral facts that he could have used to rebut them--such as the identities
of other hospital staff who may have been present during the alleged incidents, the rooms in which
the alleged incidents occurred and their configuration, and whether J.G. was seated or laying down
when the alleged incidents occurred.

 Such inconsistencies in accounts, however, are ordinarily a subject of cross-examination, not indicia of a due process violation. In fact, Granek did cross-examine J.G. regarding
inconsistencies between her contemporaneous accounts and her hearing testimony, as well as the
details of her surroundings when the incidents occurred. While at times confused or inconsistent
regarding her surroundings when the events in question occurred, J.G. testified in detail regarding
how Granek had touched her and remained unequivocal as to those facts. See Reddy, 259 A.2d at
848-49 (no due process violation where complainant "recalled details of the events with clarity.").
We also emphasize that the ALJ, the sole judicial actor to hear J.G.'s testimony and cross-examination firsthand, found her to be a "credible witness." We cannot conclude that the Board's
prosecution of the allegations relating to J.G. violated due process.


 Allegations regarding L.H.

 We conclude that the Board's prosecution of its two allegations relating to L.H. also
did not violate due process. The ALJ--the sole judicial actor in a position to hear the witness's
testimony firsthand and assess memory and other factors bearing on credibility--did not appear to
regard the Board's six-year delay as creating the type of staleness problems present with the
improper contact allegations. Granek cites the following as proof of actual prejudice: (1) two
eyewitnesses, Drs. Green and Rosenthal, testified based on their notes or medical records rather than
independent recollection; (2) Dr. Green testified that he "almost remember[ed]" a letter being written
to Granek upholding his initial suspension and that Green did not remember the HCA board's final
decision but only "the spirit of the final decision"; (3) no written record of the HCA board's final
decision survived; (4) Dr. Green could not recall certain details regarding his conversations with
Granek or Dr. Bruhl, the emergency room physician; (5) Dr. Bruhl testified that he could not recall
the exact words of his conversation with Granek, but "just the gist of the conversation," explaining
"remember, this is six years ago, and I'm doing my best to--give a fair representation of what my--I
mean an accurate representation of what my recall is." We have reviewed the record and conclude
that, when viewed in their proper context, none of these examples establish actual prejudice that
could give rise to a due-process violation.

 Regarding Drs. Green and Rosenthal's reliance on notes, at least one court has
pointed to the existence of contemporaneously recorded notes as a factor which mitigates the
potential prejudice from a stale agency disciplinary claim. See Giffone, 263 A.2d at 714. As for Dr.
Green's testimony regarding HCA's disciplinary actions against Granek, Granek himself
acknowledged receiving a private letter of reprimand from the hospital regarding his actions toward
L.H. Furthermore, the reference to Dr. Green's reliance on the "spirit of the final decision" is taken
somewhat out of context. Green testified that he was present when the HCA board orally announced
its final decision, and that the decision was to uphold Green's disciplinary action against Granek.
Granek's other attacks against the testimony of Drs. Green and Bruhl are chiefly out-of-context
references regarding peripheral facts; both testified regarding the material elements of the
allegations. Due process was satisfied.


 Disposition

 We sustain Granek's first issue as to the Board's allegations regarding K.G., but
otherwise overrule it. We consider the effect of this disposition on our consideration of the
remainder of Granek's issues. Regarding improper contact with patients, the Board made the
ultimate conclusion of law that "[b]ased on the Findings of Fact Nos. 45-56 and Conclusions of Law
Nos. 10-14, Respondent violated § 164.051(a)(1) and (6) and 164.052(a)(5)." The referenced
findings and conclusions concerned both K.G. and J.G., and included the finding that "[o]n more
than one occasion during an office visit, Respondent intentionally touched his patient J.G.'s breast
when she tried to avoid his touching by covering her breasts with a magazine." This finding, if
otherwise valid, would alone support the Board's ultimate legal conclusion that disciplinary grounds
existed under sections 164.052(a)(5) and 164.051(a)(1) and (6). Cf. Texas State Bd. of Med.
Examn'rs v. Koepsel, 322 S.W.2d 609, 611-15 (Tex. 1959) (sexual assault of patients constituted
"grossly unprofessional or dishonorable conduct . . . likely to deceive or defraud the public" under
statutory predecessor to occupations code section 164.052(a)(5)). We accordingly sustain Granek's
first issue as it concerns K.G.'s allegations, but otherwise overrule it, and proceed to consider
Granek's remaining issues as they concern the Board's disciplinary grounds regarding J.G. and L.H. 


Standard of proof

 In his fifth issue, Granek urges that the Board committed an error of law by utilizing
a preponderance of the evidence standard in making its factual determinations regarding each of its
claims. Granek argues that due process required the Board to apply a "clear and convincing"
standard of proof. He relies on what he characterizes as a "trend" in other states toward holding that
due process requires clear and convincing evidence in medical disciplinary actions. See, e.g.,
Nguyen v. Washington, 29 P.3d 689 (Wash. 2001); Painter v. Abel, 998 P.2d 931 (Wyo. 2000);
Johnson v. Board of Governors, 913 P.2d 1339 (Okla. 1996).

 There is no Texas authority supporting such a proposition and we have recently
rejected a similar contention with regard to professional licenses issued by the Motor Vehicle Board. 
See Pretzer v. Motor Vehicle Bd., 125 S.W.3d 23, 38-39 (Tex. App.--Austin 2003), aff'd in part and
rev'd in part, 138 S.W.3d 908 (Tex. 2004). We emphasized that agency license-revocation
proceedings are civil in nature, that in civil cases "[n]o doctrine is more firmly established than that
issues of fact are resolved by a preponderance of the evidence, and that Texas applies the clear and
convincing standard in civil cases only in 'extraordinary circumstances,'" such as civil commitment
hearings and involuntary termination of parental rights. Id. at 38-39 (internal quotations omitted). 
Following Pretzer, we continue to hold that the proper standard of proof in agency factual
determinations is preponderance of the evidence. We overrule Granek's fifth issue.


Substantial evidence

 In his second issue, Granek contends that the Board's findings and conclusions
establishing grounds for discipline are not supported by substantial evidence. Relatedly, in his fourth
issue, Granek complains that the Board committed an error of law in relying on concepts of
physician duties derived from Lunsford v. Board of Nurse Examiners as support for its conclusions
that disciplinary grounds existed . 648 S.W.2d at 395. Granek asserts that Lunsford is inapplicable
and distinguishable because it addressed the duties of a nurse, not physicians, and involved a patient
appearing at a hospital and requesting assistance from an on-duty nurse, whereas Granek had
indisputably left the hospital and was not on call. In response, the Board does not dispute that
Lunsford is inapposite, (12) but asserts that its references to the case did not prejudice Granek's
substantial rights because there was other support for the Board's conclusions of law authorizing
discipline. We agree with the Board that substantial evidence supports its findings and conclusions
authorizing discipline and that its references to Lunsford did not prejudice Granek's substantial
rights.

 When reviewing an agency decision under the "substantial evidence" test, we
consider the reliable and probative evidence in the record as a whole. Tex. Gov't Code Ann.
§ 2001.174(2)(E) (West 2004). We may not substitute our judgment for that of the agency and may
only consider the record on which the agency based its decision. Stratton v. Austin Indep. Sch. Dist.,
8 S.W.3d 26, 30 (Tex. App.--Austin 1999, no pet.). The issue before us is not whether the agency
reached the correct conclusion, but whether there is some basis in the record for its action. See City
of El Paso v. Public Util. Comm'n, 883 S.W.2d 179, 185 (Tex. 1994); see also Texas Health
Facilities Comm'n v. Charter Med.-Dallas, Inc., 665 S.W.2d 446, 452 (Tex. 1984). The crux of a
substantial evidence analysis is whether the agency's factual findings are reasonable "in light of the
evidence from which they were purportedly inferred." John E. Powers, Agency Adjudications 163
(1990). "[Substantial evidence] does not mean a large or considerable amount of evidence, but
rather 'such relevant evidence as a reasonable mind might accept as adequate to support a
conclusion' of fact." Lauderdale, 923 S.W.2d at 836 (quoting Pierce v. Underwood, 487 U.S. 552,
564-65 (1988); Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). We presume that the
agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and
the burden to prove otherwise is on the appellant. Charter Med., 665 S.W.2d at 453; Stratton, 8
S.W.3d at 30. Finally, the agency's decision should be reversed only if the party challenging the
decision demonstrates that the absence of substantial evidence has prejudiced that party's substantial
rights. See Locklear v. Texas Dep't of Ins., 30 S.W.3d 595, 597 (Tex. App.--Austin 2000, no pet.).


 Improper contact with J.G.

 We conclude that, even apart from the Board's reliance on Lunsford, substantial
evidence supports the Board's findings and conclusions that disciplinary grounds existed in regard
to Granek's improper contact with J.G.

 Granek contends that J.G.'s allegations that he touched her breasts while she was
attempting to shield herself with magazines "is too incredible to be believed." Granek points out that
the episodes occurred in small examining rooms, in a manner in which the Board's own expert
conceded was "just logistically" hard to imagine. Granek adds that his medical records and J.G.'s
account agree that there was a medical staff member in the room during some of these episodes. 
Finally, Granek emphasizes various inconsistencies and contradictions in J.G.'s testimony regarding
whether and when a staff member was in the room, the appearance of the room, and the types of
examinations or procedures Granek was conducting when the incidents occurred.

 In a contested case hearing, the ALJ is the sole judge of witness credibility and is free
to accept or reject the testimony of any witness or even accept "part of the testimony of one witness
and disregard the remainder." Southern Union Gas Co. v. Railroad Comm'n, 692 S.W.2d 137, 141-42 (Tex. App.--Austin 1985, writ ref'd n.r.e.). We are not permitted to substitute our judgment for
the ALJ's regarding the credibility of witnesses. Ford Motor Co. v. Texas Dep't of Transp., 936
S.W.2d 427, 429-30 (Tex. App.-Austin 1996, no writ). We must resolve evidentiary ambiguities
in favor of the administrative order with a finding of substantial evidence to support the ALJ's
decision. Railroad Comm'n of Tx. v. Torch Operating Co., 912 S.W.2d 790, 792 (Tex. 1995).

 Texas courts have recognized that "incredible, perjured, or unreasonable" testimony
is not substantial evidence. Firemen's and Policemen's Civil Serv. Comm'n v. Brinkmeyer, 662
S.W.2d 953, 956 (Tex. 1984). Mindful of our limitations as an appellate court evaluating a cold
record from a bird's-eye view, we cannot conclude that J.G.'s testimony rises to this level. Although
somewhat confused and inconsistent regarding the details of her surroundings when the incidents
occurred, J.G. testified unequivocally that Granek touched her breasts despite her attempts to shield
herself with magazines. The ALJ heard this testimony firsthand, was able to observe J.G. and her
demeanor, and concluded that "J.G. made a credible witness." We cannot second-guess such
credibility determinations in the guise of a substantial-evidence inquiry.


 Failure to attend L.H.

 As previously discussed, the Board concluded that Granek's failure to attend L.H. in
the emergency room was a failure "to practice medicine in an acceptable professional manner
consistent with public health and welfare," Tex. Occ. Code Ann. § 164.051(a)(6), and
"unprofessional or dishonorable conduct that is likely to . . . injure the public." Id. §§ 164.051(a)(1),
164.052(a)(5). The Board based these conclusions upon its fact-findings regarding the episode, as
well as other legal conclusions setting forth the Lunsford duties, which the Board now agrees are
inapplicable, and the tort of patient abandonment. Granek asserts there is not substantial evidence
supporting a finding of patient abandonment because, at all relevant times, L.H. was under the care
of the emergency room physician and staff. See King, 918 S.W.2d at 112. We need not address
whether Granek's conduct constituted the tort of abandonment because there is other substantial
evidence to support the Board's ultimate conclusion that Granek's failure to attend L.H. violated
sections 164.051(a)(1) & (6) and 164.052(a)(5) of the occupations code.

 Our ultimate inquiry is whether substantial evidence supports the Board's conclusions
that Granek violated the statutory disciplinary grounds of "fail[ing] to practice medicine in an
acceptable professional manner consistent with public health and welfare" and "committ[ing]
unprofessional . . . conduct that is likely to . . . injure the public." See Tex. Occ. Code Ann.
§§ 164.051(a)(6), .052(a)(5). When enacting these statutory provisions, the legislature did not
explicitly reference tort duties or other common law concepts. Berezowski v. Texas State Bd. of Med.
Exam'rs, No. 03-03-00735-CV, 2004 Tex. App. LEXIS 6255, at *22-23 (Tex. App.--Austin July
15, 2004, no pet.) (memorandum opinion). While such open-ended statutory language invites its
own set of problems, under these circumstances we are required, as with all statutes, to apply its
plain meaning to effectuate the legislature's intent. See Office of the Attorney Gen. of Tex. v. Lee,
92 S.W.3d 526, 528 (Tex. 2002).

 There is substantial evidence that Granek committed these statutory violations. First,
the Board's expert, Dr. Christen Held, testified that, based on her review of relevant medical records,
Granek's care and treatment of L.H. did not meet the standard of care and was a professional failure
to practice medicine consistent with the public health and welfare. See Tex. Occ. Code Ann.
§ 164.051(a)(6). This testimony, which is not challenged on appeal, is sufficient evidence that
Granek failed "to practice medicine in an acceptable professional manner consistent with public
health and welfare." Id. Furthermore, because patients are considered members of the public, as
noted in conclusion of law 10, see Koepsel, 322 S.W.2d at 611, Held's testimony also supports the
Board's conclusion that Granek committed "unprofessional . . . conduct that is likely to . . . injure
the public." Tex. Occ. Code Ann. §§ 164.051(a)(1), .052(a)(5). 


 HCA disciplinary action

 The Board's controlling conclusion of law that Granek violated occupations code
section 164.051(a)(7) is based on fact-findings that state, in relevant part, that Granek was summarily
suspended by HCA chief of staff Dr. Larry Green, Granek then appealed the suspension to an ad hoc
peer review committee at HCA, the committee rescinded the summary suspension but recommended
a probated twelve-month suspension with monitoring, and the HCA Board of Trustees rendered a
final decision affirming the peer review committee's recommendation. Granek first contends that
there is not substantial evidence of the action taken by the HCA board because the final decision is
missing from the hospital's records. We reject this argument because Dr. Green testified that he was
present when the HCA board orally announced its decision to affirm the recommendation of a
probated twelve-month suspension with monitoring.

 Granek next argues that there is not substantial evidence of the other elements of
section 164.051(a)(7), namely, that the Board found that the HCA disciplinary action "was based on
unprofessional conduct . . . that was likely to harm the public." Tex. Occ. Code Ann.
§ 164.051(a)(7)(A). We have already concluded that there is substantial evidence to support the
Board's conclusion that Granek's failure to attend L.H. constituted "unprofessional . . . conduct that
is likely to . . . injure the public. Id. §§ 164.051(a)(1), .052(a)(5). Because the HCA disciplinary
action was directed to the same conduct, we likewise conclude there is substantial evidence to
support discipline under section 164.051(a)(7). 

 We overrule Granek's second and fourth issues.


The Board's explanation regarding sanctions

 Having concluded that the Board's determination that it had grounds to discipline
Granek presents no grounds for reversal, we now turn to whether its actions in determining sanctions
require reversal. 

 In his third issue, Granek contends that the Board improperly modified the ALJ's
order by replacing conclusions of law 20 and 21 with its "ridiculous four paragraph insert," which
Granek contends does not identify any of the permissible bases under government code section
2001.058(e) and contains factual assertions unsupported by the evidence and inconsistent with the
Board's own adopted findings.

 An agency may modify an ALJ's order or change an ALJ's finding of fact or
conclusion of law only if the agency determines that (1) the ALJ improperly applied or interpreted
the law, agency rules or policies, or prior administrative decisions; (2) the ALJ based her decision
on a prior administrative decision that is incorrect; or (3) a finding of fact contains a technical error
requiring correction. Tex. Gov't Code Ann. § 2001.058(e) (West 2000). The agency is required to
explain with particularity its specific reason and legal basis for each change made. Id.; Levy v. Texas
State Bd. of Med. Exam'rs, 966 S.W.2d 813, 815-16 (Tex. App.--Austin 1998, no pet.). 

 The Board responds that section 2001.158(e) is not implicated for two reasons. First,
the Board argues that an ALJ's recommendation regarding penalties is not the type of finding of fact
or conclusion of law that is presumptively binding on the Board. See Brinkemyer, 662 S.W.2d at
956; Fay-Ray Corp. v. Texas Alcoholic Beverage Comm'n, 959 S.W.2d 362, 368 (Tex.
App.--Austin 1998, no writ). Second, the Board urges that Granek waived his right to complain of
the Board's compliance with section 2001.058(e) by failing to file a motion for rehearing after the
Board issued its September 23 Amended Final Order. Finally, the Board contends that Granek was
not prejudiced by the removal of the two conclusions of law because it subsequently modified its
sanctions to a three-year probated suspension, which it characterizes as essentially the same
sanctions that the ALJ had recommended. 

 We conclude that section 2001.158(e) is implicated by the Board's actions. Granek
preserved his right to complain of the Board's explanation by filing a motion for rehearing to the
Board's original April 24 order. (13) We agree with the Board that it is not required to give
presumptively binding effect to an ALJ's recommendations regarding sanctions in the same manner
as with other findings of fact and conclusions of law. However, the Board nonetheless provided a
"specific reason and legal basis" for its rejection of proposed conclusions of law 20 and 21 and the
sanctions the ALJ had recommended. The Board explained that "[t]he ALJ's proposed conclusions
of law are not really conclusions of law at all, but recommended sanctions. While it may be
appropriate for the ALJ to recommend a sanction, it is ultimately up to the Board to determine what
the appropriate sanction should be." The Board went on to "conclud[e] that the revocation of
Respondent's license is the only sanction that will adequately protect the public" and, as previously
noted, to elaborate at some length regarding its reasons for imposing that penalty.

 In its explanation, the Board represented that Granek had engaged in the "conduct of
fondling and molesting patients while performing ophthalmologic examinations on them," had
"engaged in this conduct over a period of many years," had "an inability to control his prurient
desires," and "defects in character," and would continue "assaulting, fondling or molesting . . .
patient[s] . . . under the guise of practicing medicine" if allowed to retain his medical license. None
of these representations are supported by the Board's findings, and several are flatly contradictory. 
The Board established that Granek intentionally touched the breast of only one patient, J.G.; proved
only that he had inadvertently touched the breast of K.G., a claim we have found is barred by due
process; and failed to prove any other allegations of this nature regarding other patients. 
Furthermore, there is no evidence that Granek "engaged in this conduct over a period of many
years"; J.G. testified to, at most, a three to four year period during the 1980s in which the touching
episodes occurred, the last of which was in 1987. The Board's own findings state that Granek had
changed his behavior since 1994 and "was not shown to constitute a continuing threat to the public."

 The gravamen of the Board's explanation is that it imposed its original revocation
sanction based on its own opinions regarding improper contact allegations that had not been proven.
Whatever its original implications, the Board suggests that the continued inclusion of this
explanation in its orders does not prejudice Granek's substantial rights because it refers to a sanction
that the Board no longer seeks. We disagree.

 The Board's order now requires Granek to provide a copy of the order to all health
care facilities where he had or sought privileges. In other words, Granek must provide to these
institutions a document containing unproven assertions that he had "fondl[ed] and molest[ed]
patients while performing ophthalmologic examinations on them," had "engaged in this conduct over
a period of many years," and was a continuing threat due to his "inability to control his prurient
desires." These statements were included in a Board order, giving them the imprimatur of a
legitimate adjudicative determination. We can fathom no legitimate basis for the Board to include
these assertions in its order, especially where it now no longer seeks to impose the revocation
sanction to which the explanation was addressed. We hold that the Board's explanation violates
section 2001.058(e) and is arbitrary and capricious. See Tex. Gov't Code Ann. § 2001.174(2) (West
2000). We sustain Granek's third issue.

CONCLUSION


 We conclude that any findings of fact or conclusions of law referring to conduct with
K.G. are improper because the Board was barred by due process from prosecuting its thirteen year-old allegations regarding K.G. However, its ultimate conclusion that disciplinary grounds exist for
Granek's improper contact with patients is supported by its findings, conclusions and evidence
regarding J.G. We also overrule Granek's issues concerning the two disciplinary grounds relating
to L.H. However, we find arbitrary and capricious the Board's four-paragraph explanation
grounding sanctions on unproven assertions of his "fondling and molesting patients . . . over many
years" and uncontrollable "prurient desires." These portions of the Board's order violate section
2001.058(e). See Tex. Gov't Code Ann. § 2001.058(e).

 We reverse and remand to the Board for further proceedings consistent with this
opinion. See id. With the foregoing exceptions, we affirm the trial court's judgment. 



 

 Bob Pemberton, Justice

Before Justices Kidd, B. A. Smith and Pemberton;

 Justice Kidd Not Participating

Affirmed in Part; Reversed and Remanded in Part

Filed: August 26, 2005
1. Appellee Donald W. Patrick, M.D. is the Executive Director of the Board.
2. Patient abandonment is a form of breach of duty in a medical malpractice action. Elements
of an abandonment claim are (1) the unilateral severance of the doctor-patient relationship by the
doctor; (2) without reasonable notice or without providing adequate alternative medical care; (3) at
a time when there is a necessity of continuing medical attention. King v. Fisher, 918 S.W.2d 108,
112 (Tex. App.--Fort Worth 1996, writ denied).
3. In Lunsford, this Court affirmed an order of the Board of Nursing Examiners imposing
discipline for "unprofessional or dishonorable conduct" in refusing to treat a patient who had
presented himself at an emergency room with chest pains. The patient subsequently died while en
route to another hospital. In response to the nurse's claim that she owed no duty to care for the
patient, we found such a duty based in part on the following assertions:


When appellant received the privilege of being licensed as a nurse in this State,
she entered into a covenant to serve the people of this State with all her
professional skills and powers. This suit is not brought in contract or in tort by
one individual who feels he or she has been wronged by appellant's actions or
inaction, but this suit is brought by the people of this State for appellant's
violation of her contractual duties to them to always act in a professional and
honorable manner.


Lunsford v. Board of Nurse Exam'rs, 648 S.W.2d 391, 395 (Tex. Civ. App.--Austin 1983, no writ). 
4. The ALJ found that the Board had failed to prove similar allegations regarding two other
patients. In addition, the Board raised three other allegations that were either dismissed voluntarily
or found to be unproven. None of these allegations are at issue in this appeal.
5. The court explained that it enjoined the April 24 order because "Section 164.001 [of the
occupations code] tells me that the order is live and operative unless it is stayed."
6. See Tex. Occ. Code Ann. § 164.011(c) (West 2004). 
7. By this juncture, under the limited scope of the remand, the Board had already replaced its
original April 24 order with the September 23 Amended Final Order. Granek apparently sought this
relief out of an abundance of caution that the original April 24 order might still be effective.
8. Following its ultimate conclusions of law finding each ground for discipline, the order
states: "Based on the foregoing, the Board should discipline Respondent."
9. See Tex. Pen. Code Ann. §§ 21.07 (West 2003) (public lewdness, classified as 
misdemeanor), 22.01 (West Supp. 2004-05) (assault, classified as misdemeanor); Tex. Code Crim.
Proc. art. 12.02 (West 2005) (two-year statute of limitations for misdemeanors); Tex. Civ. Prac. &
Rem. Code §§ 16.003(a) (West 2002) (two-year statute of limitation on civil actions), 74.251(a)
(West Supp. 2004-05) (two-year statute of limitations for medical malpractice claims).
10. For example, the complainant supporting certain other of the Board's allegations below,
a patient named P.G., died during the pendency of the complaint, crippling the Board's ability to
prove those allegations. 
11. We also observe that, under the Board's proposed due process test, it is questionable
whether defendants could ever establish that a prejudicial delay by the Board was intentionally
sought for tactical advantage. Texas law shields virtually all Board investigative materials from
discovery. Tex. Occ. Code Ann. § 164.007(c) & (d) (West 2004). 
12. We also note that there is apparently no Texas decision applying the Lunsford duties to
physicians and none that specifically apply to any other health services profession Lunsford's view
that a health care professional license is a covenant to serve the people of the State of Texas with
"professional skill and power" or a contract "to always act in a professional and honorable manner."
Lunsford, 648 S.W.2d at 395.
13. Granek did not oppose the remand preceding the September 23 Amended Final Order, and
the remand was limited solely to "a reconsideration and possible further action relating to the penalty
imposed." Because Granek complains not of the penalty imposed in the Amended Final Order, but
of the Board's inclusion of its explanation for its original revocation sanction, he preserved error by
raising the complaint in his motion for rehearing of the April 24 order.